JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant/cross-appellee Nancy Dzina ("Nancy") and plaintiff-appellee/cross-appellant Daniel Dzina ("Daniel") both appeal the trial court's finding them in contempt as well as the court's findings regarding distribution of funds under their separation agreement. Finding some merit, we affirm in part, reverse in part, and remand
 {¶ 2} On December 21, 1998, Daniel and Nancy executed an agreed judgment entry for divorce and a separation agreement ("separation agreement"), which governed spousal support and the division of property. At the time of the divorce, Daniel was the sole shareholder of NorthPoint Properties, Inc. ("NorthPoint") which owned two properties in Cleveland — 775 East 152nd
Street ("Property 152") and 75 Public Square ("Property 75"). Pursuant to the separation agreement, Nancy was entitled to 50% of the "net quarterly cash flow" received by NorthPoint for these properties or, in the event that either property was sold, 50% of the "after-tax net proceeds." It was determined that Daniel would initially pay Nancy $14,000 per month for spousal support with the agreement that such amount would be adjusted when the actual net quarterly cash flow of the properties was determined. The parties were required to mutually agree on the manner for determining the quarterly adjustment.
 {¶ 3} The agreement also contained a "buy-out" provision wherein Nancy's right to spousal support, i.e., the payment from the cash flow of the properties, would be terminated upon a payment of an amount equal to 50% of NorthPoint's equity in the two properties. The agreement allowed either party to trigger the "buy-out," subject to certain conditions. In Daniel's case, he could exercise this option if Nancy refused to consent to refinance the properties for purposes of securing additional debt. As for Nancy, she was entitled to exercise her right to the "buy-out" payment at any time and Daniel was required to pay, provided that he was able to procure financing to make such payment.
 {¶ 4} On December 14, 2000, Daniel sent Nancy a request for permission to refinance the properties. After Nancy failed to respond, Daniel exercised his option to "buy-out" Nancy by paying her 50% of the equity in Property 75.
 {¶ 5} Prior to Daniel's exercising this option, Nancy moved to show cause against Daniel and alleged that he violated the divorce decree by ceasing to pay the $14,000 monthly spousal support. She argued that Daniel had ceased paying any spousal support when their son reached age 18 in November 2000. Nancy filed another motion to show cause on May 9, 2001, arguing that Daniel sold Property 152 without disclosing such sale and, further, that he failed to disburse one-half of the proceeds to her.
 {¶ 6} Daniel also filed motions to show cause against Nancy. He contended that she failed to cooperate with the quarterly adjustments of cash flow. He further argued that he ceased payment because he believed that he had overpaid spousal support based on the fact that the $14,000 monthly payments had surpassed the actual net quarterly cash flow of the properties.
 {¶ 7} The trial court appointed James Flannery ("Flannery"), a certified public accountant, to determine the equity in Property 75 and to review and determine compliance with all financial matters contained in the separation agreement. After a one-year investigation, involving the review of thousands of documents and extensive discussions, Flannery issued his report on July 3, 2002 and allowed additional feedback from Daniel and Nancy. Following the exchange of additional information from Daniel and Nancy, Flannery issued an amended report on August 30, 2002.
 {¶ 8} The court conducted a hearing on all post-decree motions on October 8, 9, and 10, 2002, at which Flannery, Daniel, and Nancy testified. The court issued its decision on May 13, 2003. In its order, the court made numerous findings as to the calculation of spousal support, the division of property, and the determination of compliance. Finding that both Daniel and Nancy had failed to comply with the divorce decree, the court found both parties in contempt and sentenced each to 30 days in jail, to be purged upon the payment of each party's financial obligations as delineated in the order.
 {¶ 9} From this order, both parties appeal, raising a total of eighteen assignments of error. We will address these assignments of error together and out of order where appropriate.
 Standard of Review {¶ 10} To the extent that Nancy challenges the trial court's findings of fact in her second, third, fifth, seventh, and eighth assignments of error, we review these alleged errors pursuant to an abuse of discretion standard. Similarly, Daniel's first cross-assignment of error is subject to the same standard of review because all of these errors challenge the trial court's findings which enjoy a presumption of being correct, since the trial court is in the best position to view the witnesses and weigh the credibility of the proffered testimony. Mays v. Mays,
Ross App. No. 01CA2585, 2001-Ohio-2585, citing In re Jane Doe 1
(1991), 57 Ohio St.3d 135, 138; Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 23. See, also, Dombroski v. Dombroski (Sept. 29, 1999), Harrison App. No. 506, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77. Thus, a reviewing court will not reverse factual findings that are supported by some competent, credible evidence. Sec. Pacific Natl. Bank v.Roulette (1986), 24 Ohio St.3d 17, 20; C.E. Morris Constr. Co.v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 11} Although ordinarily the interpretation of a divorce decree, as with any other contract, involves a question of law and is therefore reviewed de novo, the same standard does not apply when the agreement is ambiguous. See Patel v. Patel
(Sept. 9, 1999), Athens App. No. 99CA21. Rather, an interpretative decision by the trial court regarding an ambiguous provision in a separation agreement will not be reversed without a showing of an abuse of discretion. Yaeger v. Yaeger, Geauga App. No. 2002-G-2453, 2004-Ohio-1959, ¶ 27.
 {¶ 12} As stated in In re Dissolution of Marriage of Seders
(1987), 42 Ohio App.3d 155, 156:
 {¶ 13} "Whenever a clause in a separation agreement is deemed to be ambiguous, it is the responsibility of the trial court to interpret it. The trial court has broad discretion in clarifying ambiguous language by considering not only the intent of the parties but the equities involved. An interpretative decision by the trial court cannot be disturbed upon appeal absent a showing of an abuse of discretion. Blakemore v. Blakemore (1983),5 Ohio St.3d 217."
 {¶ 14} Further, when language found in a separation agreement is deemed ambiguous, the trial court may rely on parol evidence for purposes of interpreting it. Williams v. Williams (July 12, 2001), Cuyahoga App. No. 78193.
 {¶ 15} Insofar as Nancy and Daniel challenge the trial court's interpretation of Sections 7(C) and 7(B) of the separation agreement in assignments of error four, six, and cross-assignment of error two, we likewise apply an abuse of discretion standard because we find these provisions ambiguous. As addressed more fully within each specific assignment of error, these sections pertain to the calculation of spousal support and application of certain deductions to determine the "after-tax net proceeds" and the "net quarterly cash flow." We likewise find no error in the trial court's reliance on Flannery's report and the parties' own testimony to determine their intent behind these terms. We defer to the trial court's interpretation and accordingly uphold its interpretation, absent an abuse of discretion.
 Double Deduction {¶ 16} In her first assignment of error, Nancy contends that the trial court erred by calculating a double deduction from the amount owed to her based on a debt owed to the estate of Rocco Russo. Specifically, she argues that the court erroneously deducted an additional $153,705 from the amount owed to her because the deduction was already made in Flannery's calculation of her share of Property 152's sale proceeds. Daniel concedes this error and, thus, we sustain Nancy's first assignment of error. Accordingly, her award should be increased by $153,705.
 Loans from Rocco Russo {¶ 17} In her second assignment of error, Nancy contends that the trial court erroneously allowed a deduction from the sale proceeds of Property 152 for loans allegedly made by Rocco Russo ("Russo loans"). She argues that because there was neither any recording of the loans nor any claim made by the estate of Rocco Russo to collect the money, the trial court abused its discretion by allowing the deduction. Additionally, she contends that Daniel is barred from claiming a deduction because he failed to disclose the existence of the alleged loans earlier in the proceedings. In response, Daniel counters that the trial court adopted the recommendation of the expert and, therefore, the decision is based on competent, credible evidence.
 {¶ 18} In the instant case, Flannery was asked to determine Nancy's 50% interest of "after tax net proceeds" from the sale of Property 152. In making this determination, Flannery deducted all debt related to the property from the sale price and then divided the amount in half. Finding that Rocco Russo had loaned Daniel $374,910 for the benefit of Property 152, Flannery opined that the loans should be deducted from the sale proceeds. This amount accounted for the $67,500 that Daniel had already paid Russo in 2001 and the additional amount of $307,410 still owed to the estate. In his report, Flannery stated that it was obvious that Russo loaned Daniel $307,410 based on the insurance company checks and circumstances surrounding these transactions. Additionally, Flannery relied on an affidavit of Rocco Russo, detailing the loans and allowed only those amounts attested to in the affidavit that were supported by other documentation.
 {¶ 19} We find that the trial court did not abuse its discretion by adopting this deduction when determining Nancy's one-half interest in the sale proceeds. However, to the extent that the trial court deviated from Flannery's recommendation, we find some merit to this assignment of error. Flannery recommended that Daniel establish an escrow account for those funds that were calculated as a deduction but had not yet been paid by Daniel. In reference to the Russo loans, Flannery recognized that $307,410 had never been paid to Russo nor his estate and, as a result, he recommended that Nancy's share of the loan, i.e., $153,705, be set aside in the escrow account.
 {¶ 20} In accordance with Flannery's recommendation, we find that Daniel should place $153,705 in escrow until the total debt of $307,410 is paid to the estate of Rocco Russo. In the event that the estate fails to make a claim for the money in a reasonable amount of time after our remand, Daniel is hereby ordered to release the funds to Nancy.
 {¶ 21} Accordingly, Nancy's second assignment of error is overruled in part and sustained in part.
Other Litigation
 {¶ 22} In her third assignment of error, Nancy contends that the trial court erroneously considered a settlement agreement reached in another case when calculating her interest in Property 75.
 {¶ 23} In applying this deduction, the trial court stated:
{¶ 24} "The Court further finds that Defendant [Nancy] hasalready acquired compensation of $250,000.00 for part of herequity interest in the property located at 75 Public Square by asettlement reached in Case No. CV374378 in the Cuyahoga CountyCourt of Common Pleas, General Division and this amount should beoffset against any amount to be paid to Defendant in compensationfor the balance of her equity interest in saidproperty."[1]
 {¶ 25} Nancy argues that the trial court unlawfully deemed the settlement agreement reached in the Crawford case as "compensation" for her equity interest. Specifically, she contends that the trial court lacked jurisdiction relating to issues in the Crawford case, that the settlement agreement was never executed and, further, that she was never a party to the suit. Daniel counters that because NorthPoint agreed to pay this amount as settlement of a suit instigated by Nancy, the trial court correctly deducted it as part of her interest in Property 75. We disagree.
 {¶ 26} Our review of the record reveals no evidence that Nancy was to benefit from the alleged settlement made in theCrawford case or that it is related to the divorce proceedings. Further, Flannery neither considered the Crawford case nor deducted the settlement amount in making his determination of Nancy's "buy-out" interest in the property. Accordingly, we find that the trial court abused its discretion by subtracting one-half of the settlement amount and attributing it as part of Nancy's buy-out payment.
 {¶ 27} Nancy's third assignment of error is sustained and, thus, her award should be increased by $250,000.
 Capital Gains Tax {¶ 28} Nancy argues in her fourth assignment of error that the trial court erroneously attributed a 30% capital gains tax to her on the sale of Property 152, although Daniel never paid any such tax. We agree.
 {¶ 29} Section 7(C) of the separation agreement governed the deduction of taxes involved in the sale of property and provided as follows:
{¶ 30} "In the event NorthPoint sells either or both of theProperties, Husband shall pay Wife fifty percent (50%) of theafter-tax net proceeds received by NorthPoint from the sale.`After-tax net proceeds' means proceeds received by NorthPointfrom the sale minus all transaction costs, mortgage debt and/orother liability repayment, taxes payable by NorthPoint and otherexpenses in connection with the sale, and further minus theincome taxes (calculated using a thirty percent (30%) combinedfederal, state and local income tax rate) payable with respect tothe sale."
 {¶ 31} Relying on this provision, Flannery multiplied the amount of money gained from the sale of Property 152 by 30%. Finding that there was a gain of $217,922 in the sale, he deducted $65,377 from Nancy's share of the sale proceeds. However, when determining this amount, he conceded that he did not examine NorthPoint's or Daniel's 2001 tax returns for the year in which the property sold. He further admitted that his calculation was not based on the actual taxes paid.
 {¶ 32} Applying an abuse of discretion standard to the trial court's interpretation, we find that no competent, credible evidence exists to support its conclusion. Here, the plain language of the separation agreement states that the sale proceeds shall be reduced by the taxes "payable" at a rate of 30%. Because Daniel never paid any capital gains tax on the property, we find that the trial court abused its discretion by deducting a capital gains tax of $65,377.
 {¶ 33} Nancy's fourth assignment of error is sustained and, thus, her award should be increased by $65,377.
 Legal and Professional Fees {¶ 34} In her fifth assignment of error, Nancy claims that the trial court abused its discretion by adopting Flannery's deduction for legal and professional fees incurred by Daniel for the benefit and management of the properties. She contends that $469,434.75 is exorbitant for a six-year period and that such an amount cannot be solely attributed to the properties. However, Nancy offers no evidence to support this contention nor to refute Flannery's expert opinion.
 {¶ 35} Here, the trial court relied on Flannery's expert opinion after his review of hundreds of invoices and investigation into each billing entry. In fact, Flannery disallowed a considerable amount of the fees Daniel sought, finding that those services pertained to his personal affairs. We cannot say that the trial court abused its discretion by adopting Flannery's finding.
 {¶ 36} Nancy's fifth assignment of error is overruled.
 Daniel's Salary {¶ 37} Nancy contends in her sixth assignment of error that the trial court erred and abused its discretion by allowing Daniel to deduct a salary of $150,000 for the years 2001 and 2002. She argues that the separation agreement did not provide for "owner's compensation."
 {¶ 38} Section 7(B) of the separation agreement provides in pertinent part:
{¶ 39} "* * * Husband shall pay to Wife as spousal support (alimony) fifty percent (50%) of the net quarterly cash flow received by NorthPoint from the Properties. `Net quarterly cash flow' means rents received during the quarter from the Properties minus all fees, operating expenses (but not depreciation), taxes payable by NorthPoint, and any other costs (including without limitation capital costs and expenditures) associated with the Properties during the quarter."
 {¶ 40} The agreement expressly provided for the deduction of all costs and operating expenses associated with the properties which would include Daniel's salary. Nancy failed to present any evidence that Daniel was neither entitled to a salary nor that a $150,000 annual salary was excessive. In contrast, Flannery opined that $150,000 was a reasonable compensation for the years 2000 and 2001. We find that the trial court did not abuse its discretion in relying on Flannery's expert opinion.
 {¶ 41} Nancy's sixth assignment of error is overruled.
 Tax Liabilities {¶ 42} In her seventh assignment of error, Nancy argues that the trial court abused its discretion by attributing one-half of Daniel's tax liabilities to her. Although she concedes that the divorce decree provides that they are jointly liable for any taxes incurred prior to 1998, she nonetheless argues that the provision did not contemplate taxes resulting from Daniel's alleged "self-dealing."
 {¶ 43} Section 12 of the divorce decree provides:
{¶ 44} "The parties have filed separate income tax returns foryears prior to 1998 and are in the process of preparing andfiling Wife's 1997 income tax returns for which they agree to bejointly liable for payment of any tax due thereon. The partiesshall file separate Federal, State and local income tax returnsfor 1998. All refunds of taxes with respect to any prior taxreturns of the parties shall be the joint property of the partiesand all liability on any prior tax return filed by either Husbandor Wife, including without limitation liability for additionaltaxes, interest and penalties, shall be the joint liability ofthe parties."
 {¶ 45} We find that the trial court did not abuse its discretion by attributing one-half of the tax liability to Nancy. First, there was no evidence presented at trial that Daniel engaged in "self-dealing." Second, even if he engaged in such activity during the course of their marriage, Nancy failed to present any evidence that she did not benefit from this conduct. In fact, Flannery indicated that Nancy directly benefited because the equity in Property 75, and in turn her "buy-out" amount, increased as a result of the alleged self-dealing.
 {¶ 46} However, the court should place this money in escrow pursuant to Flannery's recommendation until the tax liability is finally determined.
 {¶ 47} Accordingly, we overrule Nancy's seventh assignment of error.
 Appraisal of Property 75 {¶ 48} Nancy argues in her eighth assignment of error that the trial court abused its discretion by failing to utilize the last full appraisal of Property 75 to determine its fair market value. In contrast, Daniel contends in his first cross-assignment of error that the trial court erred by failing to apply the Board of Revision's valuation of the property.
 {¶ 49} Section 8(B) of the separation agreement defines "appraisal" and provides:
{¶ 50} "`Appraisal' * * * shall mean the determination of thevalue of the subject Property or Properties as determined by acertified appraiser chosen by Husband Provided, however, that if[Nancy] does not agree with or disputes the value determined bysuch appraiser, then [Nancy] shall have the option to chose (sic)a second appraiser. Thereafter, if the value of the Property orProperties remains in dispute between [Daniel] and [Nancy], then[Daniel] and [Nancy] shall agree to submit such dispute to anindependent Arbitrator which both shall agree upon."
 {¶ 51} In finding that fifty percent of the equity in Property 75 is $1,392,076, the court adopted Flannery's calculation, using an appraisal value of $4,150,000. Nancy argues that the court should have applied the higher value of $4,850,000 because it is based on a full appraisal of the property conducted in October 1998.[2] Daniel, on the other hand, contends that the fair market value of the property should be based on the Board of Revision's final determination of $3,400,000.
 {¶ 52} Our review of the record indicates that both parties asked the trial court to consider the valuation of the property assigned by the Board of Revision. In fact, Nancy encouraged the court to apply the then-existing $4,500,000 valuation by the Board of Revision over the appraisal value adopted by Flannery. Similarly, Daniel urged the court to await the resolution of his challenge of the valuation before the Board of Revision and adopt its final decision. Furthermore, neither party objected when the court expressed its desire to use the Board of Revision's valuation in determining the fair market value. The court stated in its February 3, 2003 order:
{¶ 53} "* * * [T]hat when this court ultimately issues itsJudgment Entry regarding the motions heard on October 7, 8 and 9,2002, the County Auditor's most recent value as adjusted by theCuyahoga County Board of Revision shall be used by this court forcalculating the buy-out of the Plaintiff's obligation to payspousal support to the Defendant, Nancy Dzina."
 {¶ 54} Based on this order and the parties' statements at trial, we can only conclude that the court's failure to apply the Board of Revision's valuation was a clerical error. Thus, we remand this issue for correction by the trial court.
 {¶ 55} Contrary to Daniel's assertion, however, we do not find that the Board of Revision's decision is res judicata. Here, the parties agreed by contract to determine the fair market value of the property through appraisal. We fail to see how the Board of Revision's decision operates as res judicata on a contract matter with individuals not parties to its proceedings.
 {¶ 56} Accordingly, Nancy's eighth assignment of error is overruled and Daniel's first cross-assignment of error is sustained, with a remand to correct the valuation.
 Modifying Spousal Support Provision {¶ 57} In her ninth assignment of error, Nancy contends that the trial court erroneously "modified" the separation agreement and divorce decree by terminating her right to continue support.
 {¶ 58} Pursuant to R.C. 3105.18(E), a trial court has jurisdiction to modify an order for spousal support only if the divorce decree contains an express reservation of jurisdiction.Kimble v. Kimble, 97 Ohio St.3d 424, 2002-Ohio-6667. Nancy argues that the trial court's order terminating her right to any further spousal support and barring her from pursuing any further claim constitutes an unlawful modification of the decree. We find that this argument lacks merit.
 {¶ 59} The trial court made numerous orders in the instant case, including ordering that Nancy be paid her total buy-out interest under the separation agreement. This order was based on the court's finding that Daniel had exercised his buy-out option. The agreement expressly provided that Nancy was not entitled to any further spousal support once she was paid the buy-out amount. Thus, because the court's order restates only what the separation agreement expressly provides, we do not find that the trial court unlawfully modified the agreement.
 {¶ 60} Nancy's ninth assignment of error is overruled.
 Contempt of Court {¶ 61} In her tenth assignment of error, Nancy contends that the trial court abused its discretion by finding her in contempt of court.
 {¶ 62} R.C. 2705.02 provides that disobedience of a lawful order of the court may be punished as for a contempt. Chojnowskiv. Chojnowski, Cuyahoga App. No. 81379, 2003-Ohio-298. A property division in a divorce decree may be enforced by contempt proceedings. Id., citing Harris v. Harris (1979),58 Ohio St.2d 303. We apply an abuse of discretion standard to our review of a lower court's contempt finding. Marden v. Marden (1996),108 Ohio App.3d 568, 571.
 {¶ 63} A prima facie case of contempt is evidenced where the divorce decree is before the court along with the contemnor's failure to comply with the decree. Traxler v. Traxler, Williams App. No. WM-03-015, 2004-Ohio-1644, citing Robinson v. Robinson
(Mar. 31, 1994), 6th Dist. No. 93WD053; Rossen v. Rossen
(1964), 2 Ohio App.2d 381.
 {¶ 64} In finding Nancy to be in contempt, the trial court found that she violated three separate sections of the divorce decree. Specifically, it found that she "unreasonably resisted discussions with [Daniel] regarding quarterly adjustments to spousal support," failed to pay the monthly hospitalization insurance of $17,885.28, and failed to reimburse Daniel $72,074 for his tax liability.
 {¶ 65} Here, the record contained clear and convincing evidence that Nancy committed these violations. Nancy does not dispute these findings but claims that Daniel's wrongdoings under the separation agreement prevented her from complying with her obligations. We find this defense to be without merit. Based on the evidence before the trial court, including Flannery's report and Nancy's own admissions, we find no abuse of discretion in the court's finding her in contempt.
 {¶ 66} Nancy's tenth assignment of error is overruled.
 Award of Attorney Fees {¶ 67} In her eleventh assignment of error, Nancy contends that the trial court abused its discretion by failing to award her attorney fees on her motions to show cause. We disagree.
 {¶ 68} A decision to award attorney fees is a matter within the sound discretion of the trial court. Cimperman v.Cimperman, Cuyahoga App. No. 80807, 2003-Ohio-869, citing Randv. Rand (1985), 18 Ohio St.3d 356, 359. Absent a clear abuse of discretion, a reviewing court will not reverse the judgment of the trial court. Birath v. Birath (1988), 53 Ohio App.3d 31,39.
 {¶ 69} Nancy contends that the trial court should have awarded her attorney fees pursuant to R.C. 3105.18(G), which provides:
{¶ 70} "If any person required to pay alimony under an ordermade or modified by a court on or after December 1, 1986, andbefore January 1, 1991, or any person required to pay spousalsupport under an order made or modified by a court on or afterJanuary 1, 1991, is found in contempt of court for failure tomake alimony or spousal support payments under the order, thecourt that makes the finding, in addition to any other penalty orremedy imposed, shall assess all court costs arising out of thecontempt proceeding against the person and shall require theperson to pay any reasonable attorney's fees of any adverseparty, as determined by the court, that arose in relation to theact of contempt."
 {¶ 71} We find that this section does not control the instant situation. Rather, R.C. 3105.18(H) governs, and provides as follows:
{¶ 72} "In divorce or legal separation proceedings, the courtmay award reasonable attorney's fees to either party at any stageof the proceedings, including, but not limited to, any appeal,any proceeding arising from a motion to modify a prior order ordecree, and any proceeding to enforce a prior order or decree, ifit determines that the other party has the ability to pay theattorney's fees that the court awards. When the court determineswhether to award reasonable attorney's fees to any party pursuantto this division, it shall determine whether either party will beprevented from fully litigating that party's rights andadequately protecting that party's interests if it does not awardreasonable attorney's fees."
 {¶ 73} R.C. 3105.18(G) specifically addresses the failure to pay spousal support, whereas R.C. 3105.18(H) pertains broadly to the enforcement of the divorce decree. At the time that Nancy first moved to show cause for Daniel's terminating the monthly spousal support, it was discovered that he had actually overpaid his monthly obligations. Thus, although the trial court found that Daniel had violated the terms of the divorce decree, the contempt was not based on the failure to pay spousal support. Because the decision to award attorney's fees under R.C.3105.18(H) is discretionary, we cannot say the trial court abused its discretion in the instant case.[3]
 {¶ 74} Nancy's eleventh assignment of error is overruled.
 Motion for a New Trial {¶ 75} In her twelfth assignment of error, Nancy contends that the trial court abused its discretion by failing to grant her motion for a new trial.
 {¶ 76} We review a trial court's decision to deny a motion for a new trial subject to an abuse of discretion standard.McCall v. Mareion (2000), 138 Ohio App.3d 794, 798. The decision lies within the sound discretion of the trial court and shall not be reversed absent a showing that its decision was unreasonable, arbitrary, or unconscionable. Id.
 {¶ 77} Civ.R. 59 governs the granting of new trials and provides nine grounds for granting a new trial. In support of her motion, Nancy relied on the following grounds:
{¶ 78} "(5) Error in the amount of recovery, whether too largeor small, when the action is upon a contract or for the injury ordetention of property;
 {¶ 79} (6) The judgment is not sustained by the weight of theevidence; however, only one new trial may be granted on theweight of the evidence in the same case;
 {¶ 80} (7) The judgment is contrary to law;
 {¶ 81} (8) Newly discovered evidence, material for the partyapplying, which with reasonable diligence could not have beendiscovered and produced at trial;
 {¶ 82} (9) Error of law occurring at the trial and brought tothe attention of the trial court by the party making theapplication; * * *"
 {¶ 83} Furthermore, in reference to bench trials, Civ.R. 59 provides:
{¶ 84} "On a motion for a new trial in an action tried withouta jury, the court may open the judgment if one has been entered,take additional testimony, amend findings of fact and conclusionsof law or make new findings and conclusions, and enter a newjudgment."
 {¶ 85} Our review of the record reveals that Nancy failed to identify the factual basis for any of the grounds in her motion. Rather, she broadly asserted that a new trial was warranted because the trial court failed to implement Flannery's recommendations or adopt her proposed findings. However, contrary to Nancy's assertion, most of the trial court's calculations were adopted from Flannery's report. Thus, those calculations were based on competent, credible evidence and the denial of a new trial as to these calculations did not constitute an abuse of discretion.
 {¶ 86} Furthermore, to the extent that we have found merit to Nancy's first, third, and fourth assignments of error, we find that the issue of a new trial is moot.
 {¶ 87} Nancy's twelfth assignment of error is overruled.
Cancellation of Life Insurance Policy
 {¶ 88} In her thirteenth assignment of error, Nancy argues that the trial court abused its discretion by failing to order the cancellation of a policy of insurance on her life.
 {¶ 89} The record reveals that Nancy never raised this issue in any of her show cause motions but later inserted a paragraph in her post-trial brief seeking cancellation of the policy. Furthermore, although Nancy presented some testimony at trial as to NorthPoint and Daniel being named beneficiaries on her life insurance policy, she also indicated to the court that litigation over the issue was still pending in another jurisdiction at the time of trial.[4] Because we find that the issue was never properly before the trial court, we cannot say that the trial court abused its discretion by failing to order the cancellation of the insurance policy. See Holman v. Grandview Hosp. Med.Ctr. (1987), 37 Ohio App.3d 151, 157, citing Republic SteelCorp. v. Bd. of Revision of Cuyahoga Cty. (1963),175 Ohio St. 179, syllabus (holding that issues not raised and tried in the trial court cannot be raised for the first time on appeal).
 {¶ 90} Accordingly, Nancy's thirteenth assignment of error is overruled.
 Interest on Sale of Property 152 {¶ 91} In her final assignment of error, Nancy contends that the trial court abused its discretion by failing to award statutory interest on her share of Property 152 sale proceeds.
 {¶ 92} In support of this argument, Nancy relies on R.C.1343.03 (A), which states:
{¶ 93} "In cases other than those provided for in sections1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides that a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."
 {¶ 94} However, the Ohio Supreme Court has held that in the context of divorce proceedings, R.C. 1343.03 is applicable only to support judgments reduced to a lump sum amount or to child support payment orders issued on or after July 1, 1992. Dunbarv. Dunbar, 68 Ohio St.3d 369, 1994-Ohio-509. Here, the determination of Nancy's share of net proceeds was not made until the court's May 2003 decision. Nancy erroneously states that she was entitled to $335,333.27 in March 2001 when the property sold for $670,666.55. However, this amount fails to account for taxes and all other required deductions in determining the "after-tax net proceeds." In contrast to Nancy's assertion, the court determined in its May 2003 decision that her share of the sale proceeds was $239,211. Given that Daniel's obligation to Nancy for the sale of Property 152 was not determined until the court's decision, we cannot say that the trial court abused its discretion by refusing to award interest. Furthermore, the separation agreement does not expressly provide for the payment of interest or any consequences for the delay in payment on Nancy's share of the "after-tax net proceeds" following the sale of Property 152. See Savage v. Savage (July 10, 2001), Franklin App. No. 00AP-1371 (refusing to award interest when the separation agreement did not provide for any interest).
 {¶ 95} Accordingly, Nancy's fourteenth assignment of error is overruled.
 Payments of Principal {¶ 96} In his second cross-assignment of error, Daniel contends that the trial court abused its discretion by refusing to apply the principal payments made on Property 75 as a deduction in the determination of net quarterly cash flow owed Nancy. We disagree.
 {¶ 97} Initially, we note that Daniel erroneously asserts that this argument is subject to a de novo standard of review. As stated above, when a contract provision is ambiguous and the court relies on parol evidence for its interpretation, a reviewing court defers to the findings of the trial court. See e.g., In re Dissolution of Marriage of Seders, supra;Williams, supra.
 {¶ 98} In the instant case, the court adopted Flannery's finding that principal payments on Property 75 should be excluded for purposes of determining the net quarterly cash flow of the property. Contrary to Daniel's assertion, we find that this determination is not merely a question of law without any regard to the circumstances surrounding the parties' intent and the parties' prior practice. For purposes of determining cash flow, Flannery reviewed 17 banker's boxes of documents and conducted extensive interviews with Nancy and Daniel regarding the allowance and disallowance of certain deductions. Prior to the hearing, both parties received a copy of his amended expert report. However, despite obvious knowledge of Flannery's deduction of the principal payments, Daniel neglected to present any evidence rebutting Flannery's finding or even challenging the finding at trial.
 {¶ 99} Thus, because the trial court relied on competent, credible evidence, we cannot say that it abused its discretion.
 {¶ 100} Daniel's second cross-assignment of error is overruled.
 $40,000 "Set Aside" {¶ 101} In his third cross-assignment of error, Daniel argues that the trial court erred by failing to deduct from the final payment the $40,000 it ordered to be set aside for tax liabilities.
 {¶ 102} In its order, the trial court stated:
{¶ 103} "The Court further finds that an additional amount of $40,000 may be required to satisfy Defendant's share of any pending tax issues and therefore said amount should be set aside from any amount due Defendant from Plaintiff."
 {¶ 104} Our review of the record indicates that the trial court accounted for the $40,000 set aside amount when calculating the total payment of $685,035 owed to Nancy. However, consistent with Flannery's recommendation, we find that this $40,000 should be placed in an escrow account for pending tax liabilities.
 {¶ 105} Accordingly, Daniel's third cross-assignment of error is overruled.
 "Equity Interest" {¶ 106} In his final cross-assignment of error, Daniel argues that the trial court erred in referring to an "equity interest" held by Nancy in its May 2003 order. Specifically, Daniel contends that the trial court's reference to an "equity interest" essentially rewrites the terms of the separation agreement. Further, he claims it constitutes error because it negatively impacts his future tax liability and allows Nancy to encumber his property.
 {¶ 107} In support of this argument, Daniel relies on Section 8(A) of the separation agreement, which provides:
{¶ 108} "Although Wife is entitled to payments hereunder basedon the net quarterly cash flow and/or after-tax net salesproceeds of the Properties, Wife acknowledges and agrees that sheis neither owner of the Properties nor a shareholder inNorthPoint, and has no decision making power, authority orcontrol whatsoever with respect to the Properties, all of whichshall remain with Husband"
 {¶ 109} Because we find that an "equity interest" is different than a right to payment and, further, that the separation agreement repeatedly and consistently treated the payments due Nancy as support, we sustain this assignment of error. Accordingly, on remand, we order the trial court to correct this misstatement.
 {¶ 110} Judgment affirmed in part and reversed in part. Case remanded for further proceedings consistent with the findings in this opinion on pages 7, 9, 11, 12, 15, 17, 27, 28.
It is ordered that the parties bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Domestic Relations Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J. and McMonagle, J. Concur.
[1] Case No. CV-374378 shall be referred to as the Crawford
case.
[2] Flannery explained that the October 1998 full appraisal was premised on certain improvements being made and upon rental income increases from occupancy. Because some of the improvements were not made and the occupancy projections were not achieved, a second appraisal was done in November 2000. Further, he indicated that the later appraisal was the most recent and accurate at the time of his report and at trial.
[3] Moreover, Nancy was also found in contempt for violating various provisions of the divorce decree. Thus, the intent of the statute is not served by awarding attorney fees to a party who is also guilty of contempt.
[4] Although the parties subsequently reached a stipulated agreement in the California case, dismissing their claims without prejudice and preserving the right to litigate in the underlying case or another jurisdiction, Nancy nonetheless failed to properly raise the issue below.