[Cite as *Moore v. Moore*, 2014-Ohio-1920.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Lorraine K. Moore, | : | |
| Plaintiff-Appellant, | : | No. 13AP-791 |
| | | (C.P.C. No. 09 DR 1961) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| John B. Moore, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on May 6, 2014

*Richard A. Peck*; *Janie D. Roberts*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Lorraine K. Moore, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, denying her motion for contempt against defendant-appellee, John B. Moore. We affirm.

I. Facts and Procedural Background

{¶ 2} Appellant filed for divorce from appellee in May 2009. The court finalized and filed the divorce decree on June 22, 2010.

{¶ 3} As part of the final decree, Section 3 encompassed the "Spousal Support" provision and outlined appellee's financial obligations to appellant, which contained both a fixed and variable amount of money. Sections 3.2 and 3.3 provide the following:

> **3.2**. Upon such time as a Chapter 13 bankruptcy proceeding is filed on [Appellee]'s behalf, and for so long as [Appellee] continues to be responsible for the monthly payment associated with the 2004 Volvo C70 as set forth above, [Appellee] shall pay [Appellant] four hundred dollars and zero cents ($400.00) per month in taxable spousal support. In

addition, [Appellee] shall pay [Appellant] forty (40%) of any and all commission checks he receives per month, net of any income taxes on the same.

**3.3** At such time as the Volvo is paid off, [Appellee] shall thereafter pay [Appellant] six hundred dollars and zero cents ($600.00) per month in taxable spousal support, plus forty percent (40%) of any and all commission checks he receives per month, net of any income taxes on the same.

(Decree of Divorce, at 8-9.)

{¶ 4} The evidence before the magistrate and trial court shows appellee's compensation structure was commission-based and provided that he receive an annual $80,000 draw, paid twice a month. In addition, appellee received a quarterly commission check, which was the amount remaining after his draw amount had been deducted from total commissions for the quarter. Stated differently, the draw checks served as advances to the commission appellee earned. This was the payment structure in place when the parties entered both the agreed temporary orders and the final divorce decree.

{¶ 5} Beginning in January 2011, appellee's employer ceased paying bi-monthly draws and appellee instead received his entire commission monthly. Appellee continued to pay appellant 40 percent of the commission earned over $80,000, using the same calculation he had since the divorce decree. Appellant accepted appellee's payments without objection until January 2012, when appellant filed her contempt motion.

{¶ 6} On January 27, 2012, appellant filed a motion for contempt against appellee, alleging he failed to adhere to the spousal support provisions. Appellee filed a motion to modify spousal support on February 23, 2012, arguing the change in his pay structure rendered the support provision inequitable and contrary to the intent of the parties at the time of the divorce decree. Appellant also filed a motion for attorney fees on October 24, 2012.

{¶ 7} The motions were referred to a magistrate who conducted a two-day hearing on October 25 and 26, 2012. The magistrate denied both parties' motions.

{¶ 8} The parties filed objections to the magistrate's decision, and the trial court held a hearing on May 31, 2013. The trial court agreed with the magistrate's decision and overruled each of the parties' objections.

## II. Assignments of Error

{¶ 9} Appellant asserts the following six assignments of error for the court's review:

> 1. The magistrate erred by going beyond the four corners of the spousal support provision to determine whether it is ambiguous.
>
> 2. The trial court erred in finding the spousal support provision to be ambiguous because its plain and ordinary language is not reasonably susceptible to more than one interpretation.
>
> 3. The magistrate erred by considering the testimony of the defendant's "calculations expert" to determine the meaning of an unambiguous spousal support provision.
>
> 4. The magistrate's finding of a "manifest absurdity" in "the literal wording" of the spousal support provision is contrary to law.
>
> 5. The trial court erred by failing to apply the doctrine of res judicata.
>
> 6. The trial court erred by reconsidering issues that were merged into a previous final appealable order.

## III. Standard of Review

{¶ 10} When interpreting a divorce decree that incorporates the parties' agreed entry, such as here, the normal rules of contract interpretation generally apply to ascertain the meaning of its language. *Robins v. Robins*, 10th Dist. No. 04AP-1152, 2005-Ohio-4969, ¶ 14. "The construction of a written contract is a matter of law, which we review de novo." *Van Ligten v. Emergency Servs., Inc.*, 10th Dist. No. 11AP-901, 2012-Ohio-2994, ¶ 14, citing *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, ¶ 9. "The trial court has broad discretion to clarify ambiguities, but whether a contract is ambiguous is a decision that is made as a matter of law." *Southers v. Southers*, 10th Dist.

No. 11AP-113, 2011-Ohio-6233, ¶ 7, citing *Pavlich v. Pavlich*, 9th Dist. No. 22357, 2005-Ohio-3305, ¶ 7.

## IV. Discussion

{¶ 11} For ease of discussion, the court will address appellant's assignments of error out of order.

### A. Second Assignment of Error: Ambiguous Language

{¶ 12} Appellant argues the magistrate and trial court erred when they determined the spousal support provision was ambiguous. Specifically, appellant contends "commission checks" is plain and ordinary language and is not susceptible to more than one meaning. We disagree.

{¶ 13} The objective of the court, when interpreting the terms of a contract, is to determine the intent of the parties. *Cleveland Constr., Inc. v. Kent State Univ.*, 10th Dist. No. 09AP-822, 2010-Ohio-2906, ¶ 29, citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). "A court must presume that the intent of the parties resides in the language that they used in the contract." *Id.*, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. When that language is clear, the courts look no further than the written instrument itself to find the intent of the parties. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. However, when the instrument is ambiguous, " 'the trial court has broad discretion when clarifying that ambiguous language.' " *Murphy v. Murphy*, 10th Dist. No. 12AP-1079, 2013-Ohio-5776, ¶ 37, quoting *Rohr v. Williams*, 7th Dist. No. 06 MA 171, 2007-Ohio-7207, ¶ 22.

{¶ 14} We agree with the magistrate's determination that the spousal support provision is ambiguous in that it requires appellee to pay "forty percent (40%) of any and all commission checks he receives per month, net any income taxes or the same," as well as a set amount of either $400 or $600 each month. (Decree of Divorce, at 8-9.)

{¶ 15} In a letter dated April 22, 2008, appellee's employer set forth terms of his employment. For the first 12 months, appellee's employer paid him a "commission of 9% of the net sales of the territory but no less than $8,333.34 per month (minimum guarantee)." (Tr., exhibit A.) The letter provided appellee an opportunity starting the 13th month of employment to switch to "a draw amount," paid twice a month, and have his

commission "settled up against [his] draw at the end of each calendar quarter." (Tr., exhibit A.) Appellee elected to switch to a draw with his commission settled up against the draw—the compensation arrangement in place at the time of the agreed temporary order, June 22, 2009, and the final divorce decree, June 22, 2010.

{¶ 16} In December 2010, appellee learned that beginning in January 2011, his employer would no longer pay a draw amount, and appellee would begin receiving his entire commission monthly instead. Appellant does not contest the amount of the payments made between the time the divorce decree was finalized and when appellee's employer changed his compensation structure on January 1, 2011.

{¶ 17} The compensation structure presented is contrary to appellant's argument. Appellant claims "the magistrate adds the term 'draw,' which the parties did not use" and "impermissibly and without foundation coins a term, 'draw checks,' which appears nowhere in the parties' language." (Appellant's brief, at 29.) Appellant fails to acknowledge that at the time of the divorce, appellee was, in fact, paid a "draw" that was later settled up against his commission. It was under this structure that the parties used the phrase "commission checks" to mean the difference between monthly draw amount and the commission appellee received. Appellant does not challenge the payments predating the January 1, 2011 payment structure. Rather, appellant now argues that the phrase really means any check paid to appellee by his employer.

{¶ 18} After hearing the testimony of the parties and reviewing the divorce decree, the magistrate wrote: "Having determined that the language of the decree, specifically the use of the words 'commission checks,' is reasonably susceptible to more than one meaning and is ambiguous in the context of the facts of this case, the magistrate must proceed to clarify the ambiguous language by considering not only the intent of the parties but the equities involved." (Magistrate's Decision, at 7.)

{¶ 19} Because "commission checks" is susceptible to more than one reasonable interpretation, the magistrate appropriately concluded that the phrase "commission checks" is ambiguous. Accordingly, appellant's second assignment of error is overruled.

### B. First and Third Assignments of Error: The Magistrate Erred by Going Beyond the Four Corners of the Spousal Support Provision

{¶ 20} Because the court finds the term "commission checks" is ambiguous, we must next determine whether the magistrate's interpretation of the ambiguous language was permissible.

{¶ 21} If an appellate court finds the language of a contract ambiguous, it cannot disturb a trial court's "interpretative decision" of the ambiguous contract language absent a showing of an abuse of discretion. *She v. Huang*, 10th Dist. No. 98AP-153 (Sept. 22, 1998), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). *Accord Dzina v. Dzina*, 8th Dist. No. 83148, 2004-Ohio-4497, ¶ 11, citing *Yaeger v. Yaeger*, 11th Dist. No. 2002-G-2453, 2004-Ohio-1959, ¶ 27 ("[A]n interpretative decision by the trial court regarding an ambiguous provision in a separation agreement will not be reversed without a showing of abuse of discretion."). *See also Cohen v. House-Cohen*, 10th Dist. No. 08AP-344, 2009-Ohio-6564, ¶ 29. An "abuse of discretion" is present where the trial court's judgment was "unreasonable, arbitrary or unconscionable." *Blakemore* at 219, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 22} In her first and third assignments of error, appellant argues the magistrate erred by going beyond the four corners of the spousal support provision to determine whether it is ambiguous, and by considering the testimony of appellee's "calculations expert" to determine the meaning of "commission checks." We find the arguments unpersuasive.

{¶ 23} When contract language is ambiguous, courts may consider extrinsic evidence to ascertain the parties' intent. *Galatis* at ¶ 12. When the language in a contract is susceptible to two interpretations, the court must use the interpretation that makes the contract a fair and reasonable agreement and will give it both meaning and purpose. *GLIC Real Estate Holdings, L.L.C. v. Bicentennial Plaza Ltd.*, 10th Dist. No. 11AP-474, 2012-Ohio-2269, ¶ 10. This court has stated that "where there is confusion over the interpretation to be given a particular clause in a separation agreement the trial court, in enforcing the agreement, has the power to hear the matter, clarify the confusion, and resolve the dispute." *She* citing *In re Marriage of Seders*, 42 Ohio App.3d 155, 157 (9th

Dist.1987). "The trial court has broad discretion in clarifying ambiguous language by considering not only the intent of the parties but the equities involved." *Seders* at 156.

{¶ 24} Here the magistrate conducted a two-day hearing at which both parties presented testimony and submitted exhibits for the court's consideration. The exhibits included appellee's salary information, a letter from his employer indicating his payment structure, and various financial statements.

{¶ 25} Also at the contempt hearing, an accountant testified on appellee's behalf and detailed the payment amounts due to appellant in light of appellee's change in payment structure. Appellant did not object to the accountant's testimony and stipulated to his qualifications as an expert. Because the magistrate had already determined the support provision's language was ambiguous, the accountant's testimony was appropriate extrinsic evidence to aid the court in understanding the calculations and computations regarding appellee's compensation structure.

{¶ 26} Notably, appellant implicitly agreed with appellee's understanding of the support provision language by continually accepting 40 percent of appellee's commission income *above* the $80,000 draw. Appellant accepted appellee's calculation of "commission checks" without objection for nearly one year, further supporting the magistrate's decision that both parties intended this to be the correct method for determining appellee's spousal support obligations.

{¶ 27} Based on the foregoing, we find the magistrate and trial court did not abuse their discretion when interpreting the ambiguous language in the spousal support provision. Accordingly, the court overrules appellant's first and third assignments of error.

### C. Fifth and Sixth Assignments of Error: Res Judicata and Merger

{¶ 28} Appellant contends the trial court erred by failing to apply the doctrine of res judicata and impermissibly reconsidering issues merged into a previous final appealable order.

{¶ 29} The applicability of res judicata is a question of law which an appellate court reviews de novo. *Prairie Tp. Bd. of Trustees v. Ross*, 10th Dist. No. 03AP-509, 2004-Ohio-838, ¶ 12, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm.*, 64 Ohio St.3d 145, 147 (1992).

{¶ 30} The doctrine of res judicata encompasses two related concepts: claim preclusion, or estoppel by judgment, and issue preclusion, known as collateral estoppel. *Catudal v. Catudal*, 10th Dist. No. 12AP-951, 2013-Ohio-2748, ¶ 14, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995). Under res judicata, a valid and final judgment rendered on the merits bars all subsequent actions based on any claim that arises out of the transaction or occurrence that was the subject matter of the previous action. *Kelm v. Kelm*, 92 Ohio St.3d 223, 227 (2001). Res judicata bars litigation of all claims that were or could have been litigated in a prior action. *Grava* at 382, citing *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990).

{¶ 31} In *Slife v. Slife*, 10th Dist. No. 85AP-701 (Dec. 31, 1987), this court found a trial court was not barred by res judicata when the court held a post-decree hearing to clarify the meaning of the phrase "furniture and furnishings." *Id*. This court stated "the trial court, in the midst of continuing dispute between the parties, merely clarified its original judgment but did not disturb a final judgment which was conclusive of the rights of the parties." *Id*. *See also Dorsky v. Dorsky*, 8th Dist. No. 43587 (Dec. 10, 1981) ("A divorce decree, as final judgment, is res judicata as to all issues adjudicated in the divorce action. However, * * * this does not mean that a divorce decree may not be interpreted or clarified. Moreover, parol evidence may be used to interpret an ambiguous divorce decree.").

{¶ 32} Similarly here, the trial court clarified the ambiguous phrase "commission checks" to effectuate the intent of the parties. The definition of "commission checks" was neither actually litigated, nor had the potential to be litigated. As discussed above, appellee paid appellant in a manner consistent with his understanding of what the phrase meant. When appellee's compensation structure changed, he discussed with appellant his intention to continue to pay his obligations based on his understanding of the phrase "commission checks." It was not until appellant sought to hold appellee in contempt that the issue of interpretation of the phrase came to light.

{¶ 33} Furthermore, the magistrate did not violate the merger doctrine by considering extrinsic evidence to help interpret the phrase "commission checks." Under Ohio law, in a domestic relations action, interlocutory orders merge within a final decree. The right to enforce such orders does not extend beyond the decree unless the orders have

been reduced to final judgment or have been considered by the trial court and are specifically referred to in the decree. *Huffer v. Huffer*, 10th Dist. No. 09AP-574, 2010-Ohio-1223, ¶ 12, citing *Colom v. Colom*, 58 Ohio St.2d 245 (1979), syllabus.

{¶ 34} Appellant argues the magistrate inappropriately considered child support worksheets, financial affidavits, and "equities reflected within the court file in temporary orders" while interpreting the spousal support provisions. (Appellant's brief, at 39.)

{¶ 35} However, because the spousal support provision was ambiguous, the magistrate permissibly considered extrinsic evidence to ascertain the intent of the parties. The court was not, post-decree, seeking to enforce an interlocutory order. The court merely used facts and evidence presented during earlier proceedings to discover the intent of the parties when drafting the language of the spousal support provisions that became a part of the final divorce decree.

{¶ 36} Because res judicata does not apply and the magistrate's actions did not violate the merger doctrine, appellant's fifth and sixth assignments of error are overruled.

### D. Fourth Assignment of Error: Manifest Absurdity

{¶ 37} Appellant argues in her fourth assignment of error that the magistrate incorrectly found the language of the spousal support provisions would result in a "manifest absurdity." In support of her argument, appellant contends that because both appellant and appellee "voluntarily after months of negotiations, and after each had been advised by independent counsel" entered into the agreement, the language agreed upon could not result in a "manifest absurdity." (Appellant's brief, at 35.)

{¶ 38} Common words appearing in a written contract are given their ordinary meaning unless manifest absurdity results, or unless another meaning is clearly evidenced from the face or overall contents of the instrument. *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, ¶ 29, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶ 39} Here, the magistrate determined the phrase "commission checks" was ambiguous, and permissibly relied upon extrinsic evidence to ascertain the intent of the parties. Therefore, it is unnecessary for us to evaluate whether giving the words "commission checks" their ordinary meaning would result in a manifest absurdity.

{¶ 40} Accordingly, the court overrules appellant's fourth assignment of error.

## V. Conclusion

{¶ 41} Based on the foregoing reasons, the trial court did not err in denying appellant's motion for contempt. Accordingly, we overrule appellant's six assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

CONNOR and O'GRADY, JJ., concur.