LOUIS P. SMITH v. CALEB E. GOWAN; AND MARGARET K. SMITH
v. CALEB E. GOWAN.

Decided, February 14, 1911.

*Agent to Sell Can Not Exchange—Acquiescence of Principal—Corporations—Estoppel.*

1. Power to an agent or trustee to sell, does not authorize him to exchange, but acquiescence therein until the other party to the exchange has changed his position and the status quo can not be re-established estops the principal from taking advantage of this lack of power.
2. Where all the stockholders in a corporation except the plaintiff have acquiesced in certain transactions, such conduct on the plaintiff's part as would estop him from maintaining an action for his own benefit, to have said transactions set aside, will estop him from maintaining such an action for the benefit of the corporation.

*H. L. Peeke* and *E. J. Pinney,* for plaintiffs.

*Squire, Sanders & Dempsey, Kline, Tolles & Morley* and *Henderson, Quail & Siddall,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Each of these cases is based on the same state of facts, and each is brought to set aside a transfer of the property of the Cleveland Dredge & Dock Company to the Great Lakes Dredge & Dock Company, each of which is a corporation, which transfer was made on or about the 30th of June, 1906. The plaintiff in each of these cases was a stockholder in the first named company; the plaintiff, Louis P. Smith, owning 48 per cent. of the stock, and the plaintiff, Margaret K. Smith, owning 1 per cent. of the stock. The balance of the stock was owned, 48 per cent. by J. A. Smith, a brother of the plaintiff, Louis P. Smith, and 1 per cent. by E. B. D. Smith, wife of said J. A. Smith, and 2 per cent. by James R. Sprankle, now deceased. Indeed, Sprankle was already dead at the time of this transfer and the 2 per cent.

of the stock which he had owned constituted a part of his estate. The Cleveland Dredge & Dock Company was the outgrowth of a partnership which had before its organization existed between the plaintiff, Louis P. Smith, and his brother, James A. Smith. The corporation having been first organized as the L. P. & J. A. Smith Company and then by re-organization changed to the Cleveland Dredge & Dock Company, the two brothers being equally interested in said partnership. When the corporation was organized, in order to make the number of shareholders suffi- cient to constitute a board of directors, a share of the stock which was purchased by Louis P. was issued to his wife, Margaret K., and a share of the stock purchased by James A. was issued to his wife, E. B. D., and then two shares were issued to Sprankle, who was a brother-in-law of the Smiths. .

It is agreed on the trial that though each of these wives and Sprankle were genuine stockholders, they became such simply to qualify them to act as directors, so that the corporation might be legally organized. . The purchase of the stock by Louis P. and James A. Smith was made by the transfer of the property of the partnership formerly existing between them to the corporation. Manifestly the issue of the stock, as it was issued to the two wives and to Sprankle, was that the two brothers should prac- tically control the corporation, each having an equal interest therein. In 1905, or the early part of 1906, the Cleveland Dredge & Dock Company was in financial straits. Its creditors were consulted and the result finally was that the management of its affairs was put into the hands of a committee, agreed upon between the corporation and the creditors, and spoken of as the creditors' committee. This committee undertook to tide the com- pany over its embarrassment, believing that its assets were suffi- cient to pay all its debts, and much more, provided its business could be carried on and its contracts then existing and partly performed could be completed; that this and the business it was likely to get would eventually pay all the debts and leave a good surplus for the stockholders.

On the 26th of March, 1906, a contract was signed trans- ferring the control of the affairs of the Cleveland Dredge & Dock

Company to this committee, and in terms authorizing the committee to sell the assets of the company, if it should deem it best.

The clause of said contract authorizing the sale is in these words:

"To give to said committee, which they hereby do, full authority and discretion with respect to the management of said company and the disposition of the assets of said company by *sale, liquidation or otherwise,* in such manner and at such *price,* as they may deem just and proper, at any time during the continuance of this agreement."

The committee made the transfer of the property to the Great Lakes Dredge & Dock Company, as already stated, on or about the 30th of June, 1906, the Great Lakes Dredge & Dock Company undertaking to complete various contracts for the kind of work which was carried on by the Cleveland Dredge & Dock Company, and which it had partly performed, and upon which there had been earned a large amount of money which had been retained as a percentage until the completion of these contracts. Of course it was of great importance to the Cleveland Dredge & Dock Company that these contracts should be completed so that this retained percentage could be realized. The transfer however made by the committee to the Great Lakes Dredge & Dock Company was not made for money, but there was taken in exchange for these assets stock of the Great Lakes Dredge & Dock Company, which stock was issued to a trustee, who still holds it.

The purpose of each of the present actions is to set aside this transfer and for an accounting on the part of the Great Lakes Dredge & Dock Company and the several members of the creditors' committee and the trustee. Without stopping to examine the terms of the contract of transfer we hold that the authoriy given to the committee to sell the assets of the Cleveland Dredge & Dock Company was not an authority to exchange its assets for any other property, except money or its equivalent. An authority to sell is not an authority to exchange. In support of this, attention is called to the case of *City of Cleveland* v. *State Bank of Ohio,* 16 Ohio St., 236. In this case the court construed these words:

"To sell said shares or any part thereof at such time or times as to them may seem expedient for not less than their par value and to do whatsoever else may seem necessary to secure and advance the interest of the city in the premises."

Commenting on these words the court said that such words did not authorize an exchange of the shares of stock for other property.

Certainly the language here construed was as comprehensive as the words of the contract now under consideration, giving the creditors' committee "full authority and discretion with respect to the management of said company and the disposition of the assets of said company by sale, liquidation or otherwise, in such manner and at such price as they may deem just and proper."

On the part of the defendants, however, it is urged that whatever rights the plaintiffs might have asserted, if they had acted with promptness upon learning that which had been done in the matter of this transfer, they are estopped from now asserting. As early as the 13th of July, 1906, the plaintiffs knew of this; in any event, on the 25th day of July, 1906, L. P. Smith saw the contract between the committee and the Great Lakes Dredge & Dock Company and they did nothing until the 1st day of October, 1906, when Louis P. Smith made a protest against the action which had been taken, but suits were not brought until May 21, 1907.

In the meantime the Great Lakes Dredge & Dock Company had taken possession of the assets of the Cleveland Dredge & Dock Company, which consisted of some dredges, scows and other machinery and apparatus for dredging, building docks and the like along the lakes. It had made repairs on the property, had divided it, using it with other property of the same kind which belonged to it originally, and had gone on with the completion of the contracts, which, as already stated, had been partly performed by the Cleveland Dredge & Dock Company, expending large sums of money in the completion of such work and the making of such repairs, and in short had put itself in a very different position from that in which it was with reference to these assets when it first took possession of them, and had made it

impossible to restore the *status quo*. There seems very little doubt that except for the claim that these plaintiffs are stockholders in a corporation and that whatever they may secure by virtue of these several suits would be for the benefit of the corporation, they would each be estopped from maintaining an action. In support of this, see *The United States Rolling Stock Company* v. *The Atlantic & Great Western Railroad Company,* 34 Ohio State, 450, and the authorities there cited.

But it is urged that estoppel which would be effective as against these plaintiffs, were they suing simply for an infringement of a personal right, can not be asserted to the prejudice of the corporation in which they are stockholders. A complete answer to this seems to be furnished by the fact that though the corporation is a legal entity any benefit which could come to it would be a benefit simply to its stockholders; that substantially all of its stock was owned by the two Smith Brothers; that James A. Smith and his wife are content with what has been done; that so far as appears no complaint is made by the representatives of the two shares of Sprankle stock; that there is nobody but these plaintiffs who could be benefitted by anything that could come to the corporation, who is not satisfied with the situation as it is—in fact practically nobody but the plaintiff, Louis P. Smith. It would, therefore, seem equitable and just that what would estop these plaintiffs if each was suing for an individual right should estop them from maintaining these suits. In the case of *State, ex rel,* v. *The Standard Oil Company,* 49 Ohio St., 137, the first paragraph of the syllabus reads:

"That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded."

Practically each of these suits is brought to vindicate what Louis P. Smith regards as an infringement of his personal right. The amount of stock held by Margaret K. Smith is too insignificant to make the result of this litigation of substantial im-

portance to her; and Louis P. Smith should be treated in this action, notwithstanding there is technically a corporation's rights sought to be vindicated, as suing for his individual benefit. So treating him, we hold that he is estopped from maintaining the action, and that which estops him estops Margaret K. Smith in her action, and the result is that the petitions are dismissed.