JOURNAL ENTRY AND OPINION
{¶ 1} This matter is before the court on a consolidated appeal. Appellants Nancy B. Saro and Cleveland Industrial Square, Inc. ("CIS") are appealing from a judgment entered by the Cuyahoga County Court of Common Pleas on July 6, 2004 that determined that the domestic relation's court has exclusive jurisdiction over the CIS claims asserted in the complaint and, further, dismissed for lack of subject matter jurisdiction the claims against Daniel Dzina, NorthPoint Properties, Inc., North Point Athletic Club, and North Point Athletic Club II. Appellants Saro and CIS, as well as appellants John R. Climaco and the law firm of Climaco, Lefkowitz, Peca, Wilcox Garofoli Co., L.P.A. ("the Climaco appellants"), are appealing an order of the trial court entered September 21, 2004 that granted motions for an award of attorney's fees for frivolous conduct in favor of appellees Gretchen Holderman and Myron Hren. Also before this court is the joint motion of appellees Holderman and Hren for an order granting attorney's fees and costs pursuant to App.R. 23. For the reasons discussed herein, the consolidated appeal is affirmed. The joint motion for attorney's fees is denied.
Background
 {¶ 2} Many of the facts herein are adopted from the trial court's opinions. This case stems from a bitterly contested divorce that has spawned more than ten lawsuits over the last seven years. Daniel Dzina ("Daniel") and Nancy Saro ("Saro"), f.k.a. Nancy Dzina, divorced in 1998. The divorce decree incorporated an amended and restated separation agreement, to which the parties had agreed. The divorce decree provided for the division of marital property and spousal support. The division of marital property provided for the allocation of shareholder interest in various corporations through which the parties had invested in various real estate ventures from at least 1986.
 {¶ 3} Pursuant to the separation agreement, Daniel was to retain 100 percent of his shares in NorthPoint Properties, Inc. and Saro was to retain her 50 percent of the shares in CIS. The remaining 50 percent of the shares in CIS were held by William Russell Crawford, a business associate of Saro and Daniel. CIS ceased all active business operations in 1998. The present appeal relates primarily to a dispute between Daniel and Saro concerning loans or funds that Daniel and/or NorthPoint received from CIS to finance other real estate investments, including NorthPoint.
 {¶ 4} The separation agreement provided that the parties were "fully advised with respect to the property, estate and prospects of the other and of his and her respective rights and liabilities against and to the other with respect to the property and estate of the other"; confirmed that they wanted to arrange the "settlement of their property rights"; and set forth that "this instrument [is] full settlement, now and forever, of each and all of the respective present and future claims and demands of one against the other arising out of the marriage relationship." The separation agreement also contained releases through which Daniel and Saro released and discharged "the other from all claims, demands, actions, rights, causes of action and claims for relief whatsoever, in law or in equity, which either of the parties ever had or now has against the other, except" for the provisions of the separation agreement.
 {¶ 5} Relative to spousal support, Daniel ultimately exercised a buy-out option that was equal to one-half of NorthPoint's net equity in the properties at 75 Public Square and 775 East 152nd Street. The buy-out amount was calculated by a court-appointed appraiser. The domestic relations court issued a final order from which Saro appealed.
 {¶ 6} Following the divorce, Crawford filed a complaint, in an action referred to as Crawford I, alleging that Daniel and Saro had deprived him of his rights as a 50 percent partner or shareholder in various real estate ventures. That litigation was dismissed pursuant to a settlement in the midst of a trial before Visiting Judge Richard M. Markus. Under the terms of the settlement, in exchange for $350,000 from Daniel, Crawford was to release his claims and transfer his 50 percent stock ownership in CIS to Daniel, thereby creating a 50-50 shareholder deadlock with Saro. The settlement was not timely consummated, and eventually Crawford filed another action, referred to as Crawford II, to enforce the settlement. The matter was settled and dismissed, and Daniel became the beneficial or equitable owner of 50 percent of the CIS stock on January 31, 2003.
 {¶ 7} As the trial court noted, "Crawford I is of further note because the very claims brought in the instant case filed on January 13, 2004 by CIS against Daniel, NorthPoint and others were first brought * * * as CIS cross-claims by [Saro] against Daniel and NorthPoint." These claims were dismissed without prejudice by Judge Markus on January 31, 2003 because Judge Markus found that "CIS Corporation was allocated between the parties by an order of the Domestic Relations Division of this county. The Court further finds that any dispute between [Daniel and Saro], as it addresses any remaining claims relating to CIS Corporation properly belongs before the Division of Domestic Relations of this county."
 {¶ 8} The same conclusion reached by Judge Markus was also reached by Judge Kenneth Callahan in a case referred to as theCallahan case. The Callahan case was filed by Saro personally during the pendency of Crawford I. Saro raised the same claims as personal claims in the Callahan case that CIS asserted in the instant case. In the Callahan case, Judge Callahan granted Daniel's motion for summary judgment for lack of subject matter jurisdiction, finding that "the separation agreement specifically provided how the parties would disentangle each other from their commercial enterprises in a manner agreeable to both." Judge Callahan further concluded that the "proper place to determine whether or not [Daniel] breached the terms of the Separation Agreement, which was an integral part of their divorce decree, is before the Court in which the document was drafted, namely the domestic relations division." Saro's appeal from this ruling was settled and dismissed on February 27, 2002.
 {¶ 9} During the post-decree divorce enforcement proceeding in the domestic relations court, Judge James P. Celebrezze "[i]n the interest of bringing an end for these parties to this seemingly interminable litigation," ordered that "any interest that Defendant [Saro] may claim to have a right to under the prior order of this Court [the original divorce decree] in the properties located at 715 E. 152nd Street and 75 Public Square [NorthPoint's properties] is hereby terminated and Defendant [Saro] shall not attempt to pursue any further claim" related thereto. Although Saro appealed the rulings of the post-decree enforcement hearing, no issue was raised as to the order that she "shall not attempt to pursue any further claim" regarding her interests in those NorthPoint properties.
 {¶ 10} Notwithstanding the above rulings, Saro caused the instant matter to be filed by CIS, asserting the same claims that were asserted in Callahan and Crawford I. Daniel filed a motion for declaratory judgment/relief as to the rights of Saro and CIS that was treated by the trial court as a motion to dismiss for lack of subject matter jurisdiction. Daniel asserted that Saro was the real party in interest to the action and that the claims were barred by collateral estoppel. The trial court agreed with Daniel, found that Saro was the real party in interest on behalf of the CIS claims, and dismissed for lack of subject matter jurisdiction the CIS claims raised against Daniel, NorthPoint Properties, Inc., North Point Athletic Club, and North Point Athletic Club II, Inc. Saro and CIS are appealing that ruling.
 {¶ 11} Additionally, before this court are challenges to the trial court's decision to grant attorney's fees for frivolous conduct in favor of appellees Myron Hren and Gretchen Holderman. CIS originally brought claims against Hren and Holderman inCrawford I for "possession of some or all of CIS' corporate records and [they] have refused to turn them over to CIS and/or Crawford despite demands that they do so, causing damage to CIS and/or Crawford." Hren was an accountant for CIS, and Holderman was its attorney. The claims against Hren and Holderman were dismissed under Civ.R. 12(B)(6) for failure to state a claim. Thereafter, Hren and Holderman testified in deposition and at trial favorably to Daniel. After Daniel and NorthPoint settled with Crawford, the judge in Crawford I dismissed the remaining claims of CIS without prejudice and indicated that those claims were subject to the jurisdiction of the domestic relations court. The court indicated "Case dismissed without prejudice" in its journal entry.
 {¶ 12} In the present action, claims were again brought against Hren and Holderman. This time, CIS alleged a breach of fiduciary duty in that Hren had (1) "created and mailed financial statements to Saro which contained information which Hren knew to be inaccurate and incomplete for the purpose of reducing the amounts that [Daniel] was to pay to CIS," (2) failed to provide records to CIS upon request, and (3) "turned over everything in his possession related to CIS to [Daniel] and/or NorthPoint" at a time when he was "aware of the fact that [Daniel] no longer was employed by or an officer or shareholder of CIS." CIS also alleged that Holderman breached her fiduciary duty to CIS as an attorney by notarizing an application for renewal of a general contractor's license with the city of Cleveland by Daniel Dzina on December 28, 1998, in which Daniel listed a change of name from CIS to NorthPoint. CIS claimed this was a conversion of CIS property in which Holderman participated. CIS further alleged that through this notarization, Holderman participated in a conspiracy to violate the Federal RICO statutes, including wire and mail fraud.
 {¶ 13} Despite motions to dismiss and repeated warnings of sanctions by defense counsel, CIS did not file its motion to dismiss without prejudice pursuant to Civ.R. 41(A) until July 21, 2004, the date Hren filed a motion for summary judgment. With leave of court, Hren and Holderman moved for attorney's fees alleging that CIS, Saro and their attorneys, the Climaco appellants, had engaged in frivolous conduct in filing and maintaining the claims against them, on the grounds that the claims were obviously barred by res judicata and applicable statutes of limitations, and were otherwise meritless. The trial court agreed and granted Hren and Holderman attorney's fees after conducting a hearing. Saro, CIS, and the Climaco appellants have all appealed the trial court's ruling.
Dismissal Issues
 {¶ 14} CIS and Saro have appealed the trial court's dismissal of the action for lack of subject matter jurisdiction. Their first assignment of error provides:
 {¶ 15} "The trial court erred by granting Dzina's motion to dismiss for lack of subject matter jurisdiction and by finding that Saro was the real party in interest."
 {¶ 16} The standard of review for a motion to dismiss, pursuant to Civ.R. 12(B)(1), lack of subject matter jurisdiction, is "whether any cause of action cognizable by the forum has been raised in the complaint." State ex rel. Bush v. Spurlock
(1989), 42 Ohio St.3d 77, 80. An appellate court considers the issue de novo, reviewing the issue independently of the trial court's decision. D'Agnese v. Holleran, Cuyahoga App. No. 83367, 2004-Ohio-1795.
 {¶ 17} CIS and Saro argue that Saro is only a proportional shareholder in CIS, and that the corporation is the real party in interest. They claim that the breach of fiduciary duty claims all relate to a duty owed to CIS and are for wrongs committed against CIS. They also note that CIS was not a party to the divorce proceedings and claim that the issue was properly before the general division of the common pleas court.
 {¶ 18} On the other hand, Daniel and NorthPoint claim the trial court properly applied its equitable powers to declare Saro the real party in interest as to CIS's claims. They point out that Saro had previously filed the same claims in her personal capacity. They argue that Saro is the only person who stands to benefit from the claims, because she and Daniel are the only shareholders of CIS. Also, as the lower court observed, the assets of both CIS and NorthPoint were divided and evaluated as marital assets by the domestic relations court and were further delineated with respect to determining the spousal support buy-out amount. Daniel and NorthPoint assert that the domestic relations court was the first tribunal to take jurisdiction of "the whole issue and to settle the rights between the parties."
 {¶ 19} In disregarding the corporate form in this case and finding Saro to be the real party in interest, the trial court recognized equitable principles concerning corporate existence: "`It is a familiar maxim of equity that "equity" regards the substance and not the form. The corporate separate existence of a corporation is frequently disregarded and the real substance relied on for judicial action.' Black Decker Mfg. Co. v. UnionTrust Co. (Cuy. 1936), 53 Ohio App. 356, 360. Thus, `[T]he fiction of the separate entity of a corporation may be disregarded where the ends of justice require it.' Knight v.Burns (Cuy. 1926), 22 Ohio App. 482, 486." We agree with the trial court's application of these principles.
 {¶ 20} It is well accepted that a separate corporate entity is subject, as all other fictions are, to the rule that equity will look through the form of things to their substance where the ends of justice cannot be served in any other way. As stated by the United States Supreme Court: "In discussing the legal status of private corporations, courts in the United States * * * have recognized that an incorporated entity — described by Chief Justice Marshall as `an artificial being, invisible, intangible, and existing only in contemplation of law' is not to be regarded as legally separate from its owners in all circumstances. * * * [O]ur cases have long recognized `the broader equitable principle that the doctrine of corporate entity, recognized generally and for most purposes, will not be regarded when to do so would work fraud or injustice.'" First Nat'l City Bank v. Banco Para ElComercio Exterior De Cuba (1983), 462 U.S. 611, 629 (internal notes and citations omitted). The United States Supreme Court has further stated: "Although a corporation and its shareholders are deemed separate entities for most purposes, the corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy. * * * In such cases, courts of equity, piercing all fictions and disguises, will deal with the substance of the action and not blindly adhere to the corporate form." Bangor Punta Operations, Inc. v. Bangor A.R.Co. (1974), 417 U.S. 703, 713 (internal citation omitted).
 {¶ 21} Likewise, Ohio courts have long adhered to this principle. "That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for a convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded." State, ex rel. v. Standard Oil Co.
(1892), 49 Ohio St. 137, paragraph one of the syllabus. Recognizing this authority, in Smith v. Gowan (Cuyahoga County 1911), 1911 Ohio Misc. LEXIS 245, 18 Ohio C.C. (N.S.) 99, the court held that two brothers, who owned substantially all of the stock in a corporation, were estopped from bringing an action to set aside a transfer of property of the corporation because they sought to vindicate a personal right and were the only persons who could benefit by anything that could come to the corporation. Thus, when a corporation is being used to circumvent the operation of law and to obtain a personal benefit, a court may ignore the corporate entity and look to the real party in interest. See Id.; Knight v. Burns, supra.
 {¶ 22} In this case, the same claims presented by CIS were personally brought by Saro in the Callahan case, and were brought again by Saro as CIS cross-claims in Crawford I. In both cases, the respective court determined that the claims relating to CIS properly belong before the domestic relations court. Saro is now making a third attempt to bring the exact same claims she had personally brought, this time under the guise of CIS. However, Saro clearly holds the beneficial interest in this action. Saro is a 50 percent shareholder of CIS, with the other 50 percent being owned by Daniel. As the trial court found, CIS has had no tangible assets, properties or business activities since at least 1998. Under these circumstances, it clearly appears that Saro is using the corporate form to circumvent the prior rulings and to obtain a personal benefit. We find that equity and justice require that the corporate form be disregarded and that Saro be treated as the real party in interest to this action.
 {¶ 23} Because we find that Saro is the real party in interest to this action, the next issue is whether the trial court properly concluded that under the doctrine of collateral estoppel the court was foreclosed from revisiting the issue of whether the claims were procedurally within the exclusive jurisdiction of the domestic relations court.
 {¶ 24} Collateral estoppel, also known as issue preclusion, bars the relitigation of an issue or fact that was previously determined in a prior action between the same parties or their privies. State ex rel. Stacy v. Batavia Local School Dist. Bd.of Edn., 97 Ohio St.3d 269, 2002-Ohio-6322, citing State exrel. Shemo v. Mayfield Hts., 95 Ohio St.3d 59, 64,2002-Ohio-1627. "Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party in the prior action." Thompson v. Wing,70 Ohio St.3d 176, 1994-Ohio-358.
 {¶ 25} Saro brought the same claims at issue herein on her personal behalf in the Callahan case. The Callahan court determined that it lacked subject matter jurisdiction to consider the merits of Saro's complaint and that "the proper place to determine whether or not [Daniel] breached the terms of the separation agreement, which was an integral part of their divorce decree, is before the Court in which the document was drafted, namely the domestic relations division." The Callahan court specifically recognized that the domestic relations court was the court whose jurisdiction was first invoked and that "[a]s between courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." Citing State, ex. rel. Racing Guild of Ohio v. Morgan
(1985), 17 Ohio St.3d 54.
 {¶ 26} In Crawford I, the court found that "CIS Corporation was allocated between the parties by an order of the Domestic Relations Division of this County" and that "any dispute between [Saro and Daniel], as it addresses any claims relating to CIS Corporation, properly belongs before the Division of Domestic Relations of this county."
 {¶ 27} Although Saro argues it is unclear whether theCrawford I court's ruling was based on subject matter jurisdiction or the doctrine of forum non conveniens, the court clearly stated that these claims properly belonged in the domestic relations court. Further, notwithstanding the CrawfordI ruling, which was without prejudice, the Callahan court specifically dismissed the claims for lack of subject matter jurisdiction, and the issue was actually and directly litigated between the parties in that action. Accordingly, we find that Saro is precluded from bringing the CIS claims in this action. CIS and Saro's first assignment of error is overruled.
Frivolous Conduct Issues
 {¶ 28} Appellants CIS and Saro, as well as the Climaco appellants, challenge the trial court's determination that they engaged in frivolous conduct and the court's decision to impose sanctions and award attorney's fees against them.
 {¶ 29} R.C. 2323.51 provides for an award of attorney fees to a party harmed by "frivolous conduct" in a civil action. The statute defines frivolous conduct, in relevant part, as:
"(a) Conduct of [a] party to a civil action * * * or [the] party's counsel of record that satisfies any of the following:
"(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
"(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
"(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
"(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief."
R.C. 2323.51(A)(2)(a).
 {¶ 30} A trial court is required to engage in a two-part inquiry when presented with a R.C. 2323.51 motion for sanctions. Initially, it must determine whether an action taken by the party against whom sanctions are sought constituted frivolous conduct. Second, if the conduct is found to be frivolous, the trial court must determine what amount, if any, of reasonable attorney's fees necessitated by the frivolous conduct is to be awarded to the aggrieved party. Lable Co. v. Flowers (1995),104 Ohio App.3d 227, 232-233.
 {¶ 31} While the parties dispute the standard of review to be applied to a frivolous conduct determination, we find that the initial decision of whether a party's conduct was frivolous may present mixed questions of law and fact. As such, no single standard of review applies in R.C. 2323.51 cases. Huntsman v.Lowery, Stark App. No. 2003CA00210, 2004-Ohio-753.
 {¶ 32} As stated in Curtis v. Hard Knox Energy, Inc., Lake App. No. 2005-L-023, 2005-Ohio-6421: "The question of what constitutes frivolous conduct may be either a factual determination, e.g. whether a party engages in conduct to harass or maliciously injure another party, or a legal determination, e.g. whether a claim is warranted under existing law. `[A] trial court's findings of fact are to be accorded substantial deference * * * and are reviewed under an abuse of discretion standard' while legal questions are `subject to de novo review by an appellate court.' State Farm Ins. Cos. v. Peda, 11th Dist. No. 2004-L-082, 2005-Ohio-3405, at P28 (citations omitted). The ultimate decision whether to impose sanctions for frivolous conduct, however, remains wholly within the trial court's discretion. Edwards v. Livingstone, 11th Dist. Nos. 2001-A-0082 and 2002-A-0060, 2003-Ohio-4099, at P17 (citation omitted)." See, also, Riston v. Butler, 149 Ohio App.3d 390, 397-398,2002-Ohio-2308.
 {¶ 33} This court has similarly found: "A trial court's ruling on a motion to impose sanctions will not be disturbed on appeal absent an abuse of discretion. However, the question of whether a pleading is warranted under existing law is a question of law, peculiarly within the competence of an appellate court, and will be subject to de novo review by the appellate court."Goff v. Ameritrust Co., N.A. (May 5, 1994), Cuyahoga App. Nos. 65196, 66016.
 {¶ 34} With these standards in mind, we shall address the assigned errors. We begin with the two assignments of error raised by the Climaco appellants:
 {¶ 35} "1. The trial court erred in granting defendant Myron Hren's motion for sanctions pursuant to R.C. 2323.51 and in awarding sanctions against [the Climaco appellants]."
 {¶ 36} "2. The trial court erred in granting defendant Gretchen Holderman's motion for order granting reasonable attorney fees as sanctions pursuant to R.C. 2323.51(2)(A)(I) and (II); (B)(1), (B)(2)(A)(B)(C), (B)(4) and (B)(5)(A)(II) and in awarding sanctions against [the Climaco appellants]."
 {¶ 37} The trial court found that the claims against Hren and Holderman were legally groundless; were obviously designed to merely harass or maliciously injure Hren and Holderman; and were without significant evidentiary support and unlikely to have such support after a reasonable opportunity for further investigation or discovery. The Climaco appellants claim the court erred in reaching these determinations.
 {¶ 38} The trial court initially determined that the claims against Hren and Holderman were barred by res judicata. The court determined that in Crawford I, the claim against Hren and Holderman was dismissed pursuant to Civ.R.12(B)(6) for failure to state a claim and this dismissal became a final appealable order when Judge Markus dismissed the sole remaining claim of CIS without prejudice. We have conducted an independent review of theCrawford I court's entry.
 {¶ 39} The Crawford I court granted Hren and Holderman's Civ.R. 12(B)(6) motion to dismiss for failure to state a claim. Thereafter, Daniel and NorthPoint settled their claims with Crawford. Because the only remaining claim related to CIS, Daniel, who was a defendant in Crawford I, made an oral motion to dismiss the remaining claim. The Crawford I court issued a journal entry granting that motion and finding that the dispute between Daniel and Saro as it relates to any remaining claims properly belonged before the domestic relations court. Upon this finding, the Crawford I court dismissed the remaining claim. However, in the court's journal entry, the trial court indicated the "case" was dismissed without prejudice.
 {¶ 40} On appeal, the parties dispute whether the judgment entry in Crawford I dismissed the entire action without prejudice, or dismissed only the remaining claim of CIS. Although the court acknowledged in its journal entry that CIS held the only remaining claim, which belonged before the domestic relations court, and dismissed this claim, the journal entry provides "Case dismissed without prejudice."
 {¶ 41} We recognize that in Denham v. City of New Carlisle,86 Ohio St.3d 594, 597, 1999-Ohio-128, the Supreme Court of Ohio held that "a voluntary dismissal pursuant to Civ.R. 41(A) renders the parties as if no suit had ever been filed against only the dismissed parties." Consistent with this view, Ohio courts have held that when an entire action is dismissed without prejudice pursuant to Civ.R. 41(A), as opposed to only certain claims or parties, interlocutory orders which do not contain Civ.R. 54(B) language that there is no just reason for delay are dissolved and are not appealable. See Fairchilds v. Miami Valley Hospital,Inc., Montgomery App. Nos. 20493 20542, 2005-Ohio-1712;Toledo Heart Surgeons v. The Toledo Hospital, Lucas App. No. L-02-1059, 2002-Ohio-3577; Charles Gruenspan Co., L.P.A. v.Thompson (Oct. 12, 2000), Cuyahoga App. No. 77276. As stated inToledo Heart Surgeons, supra: "We hold that an order which grants a motion for summary judgment or a dismissal for failure to state a claim upon which relief can be granted to a party while claims against other parties are still pending, and which does not contain Civ.R. 54(B) language that there is no just reason for delay, is not appealable when the entire action is later dismissed without prejudice pursuant to Civ.R. 41(A). Rather, such order is dissolved and has no res judicata effect."
 {¶ 42} In this case, Holderman argues that the case was not voluntarily dismissed under Civ.R. 41(A), but instead was involuntarily dismissed after the trial court granted a defendant's motion to dismiss the remaining claim for lack of subject matter jurisdiction. The Climaco appellants claim that a good faith argument could be made that the entire action was dismissed without prejudice. They refer to this court's ruling inState ex rel. Northpoint Props., Inc. v. Markus, Cuyahoga App. No. 82848, 2003-Ohio-5252, in which we recognized that the "[Crawford I] court dismissed the case without prejudice. * * * [A] dismissal without prejudice is not a final order * * *."
 {¶ 43} We find that because the Crawford I court stated that the "case" was being dismissed without prejudice, a good faith argument could be made under existing law that the claims raised herein are not barred by res judicata because the interlocutory order dismissing the claim against Hren and Holderman was dissolved.
 {¶ 44} Notwithstanding the trial court's finding on res judicata, the trial court held that even if the breach of fiduciary duty claims were not barred by res judicata, they were barred by the applicable statute of limitations.
 {¶ 45} We note that the trial court's opinion does not distinguish between the claims brought in Crawford I and the claims brought in this action. Even upon a good faith argument that the claims were not barred by res judicata, the claims in this action, which was commenced in January 2004, would be barred by the applicable four- and one-year statutes of limitations[1] unless the savings statute, R.C. 2305.19, applies.
 {¶ 46} The Supreme Court of Ohio has stated "the savings statute applies when the original suit and the new action are substantially the same." Children's Hosp. v. Ohio Dept. ofPublic Welfare (1982), 69 Ohio St.2d 523, 525. It has been held: "A new complaint is substantially the same as the original complaint for purposes of the saving statute, when the new complaint differs only to the extent that it adds new recovery theories based upon the same factual occurrences stated in the original complaint. When determining whether the new complaint and the original complaint are substantially the same, a court must determine whether the allegations in the first action gave the defendant fair notice of the type of claims asserted in the second action." Stone v. N. Star Steel Co., 152 Ohio App.3d 29,35, 2003-Ohio-1223 (internal citations omitted).
 {¶ 47} In Crawford I, the claim against Hren and Holderman was titled "production of CIS records" and alleged that Hren and Holderman "are in possession of some or all of CIS' corporate records and have refused to return them to CIS and/or Crawford despite demands that they do so, causing damage to CIS and/or Crawford."
 {¶ 48} In this action, the claims asserted against Holderman are entirely different and are not based on the same factual occurrences alleged in Crawford I. Count VII of the complaint asserts a claim of breach of fiduciary duty against Holderman. CIS alleges that Holderman notarized an application by Daniel to renew CIS's contractor's license knowing that the application falsely represented that CIS had changed its name to NorthPoint. Count VIII asserts a claim of civil conspiracy. CIS alleges that Daniel and Holderman conspired to convert CIS's contractor's license and commit RICO violations, committed wire and mail fraud, and engaged in a pattern of racketeering activity.
 {¶ 49} Appellant cannot now allege claims and events that were not raised in Crawford I and then contend the savings statute permits claims based on those events which otherwise would fail on statute of limitations grounds. A claim of breach of fiduciary duty based upon a notarization and a claim of civil conspiracy to commit RICO violations, as well as allegations of racketeering and wire and mail fraud, are not even remotely similar to a claim that Holderman refused to turn over CIS documents. Further, we do not find that the allegations inCrawford I gave Holderman fair notice of the type of claims asserted in this action. The two actions are not substantially the same and, therefore, the savings statute does not apply to the claims against Holderman.
 {¶ 50} To the extent that the Climaco appellants argue that CIS did not discover that Holderman had conspired to convert CIS's contractor's license until the spring of 2003, this argument is without merit. As an initial matter, the discovery rule does not apply to a breach of fiduciary duty claim. Further, insofar as the Climaco appellants propose that a good faith argument could be made that the claim was a mislabeled conversion claim or that the discovery rule should be applied, the evidence reflects that the license was set to expire in December 1998 and that the alleged conversion could have been discovered with due diligence at the time of the alleged conversion.
 {¶ 51} With respect to Hren, Count VI of the complaint asserts a claim of breach of fiduciary duty. CIS alleges that (1) Hren created and mailed financial statements to Saro which Hren knew to be inaccurate or incomplete for the purpose of reducing amounts that Daniel was to pay to CIS, (2) Hren failed to provide records to CIS upon request, and (3) Hren turned over CIS records to Daniel and/or NorthPoint at a time Hren knew Daniel was no longer employed by or an officer or shareholder of CIS. We find that this claim is substantially similar to the claim raised inCrawford I. Although this claim adds a few new allegations with respect to the transmission or lack of transmission of CIS documents, we find that Hren had fair notice of a breach of fiduciary duty claim. We are also mindful of the liberal construction that the savings statute is to be provided. SeeStone, 152 Ohio App.3d at 35.
 {¶ 52} Nonetheless, even assuming the claims against Hren were timely asserted, the trial court found that the "allegations have no significant evidentiary support and were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, which was previously had inCrawford I." With respect to the allegation that Hren provided inaccurate or incomplete financial documents to Saro for the purpose of reducing amounts that Daniel was to pay to CIS, the trial court indicated that the only evidence proffered refuted this allegation.
 {¶ 53} In Crawford I, Hren testified that everything he provided to Saro was consistent with the financial documents prepared for CIS and that all loans or moneys taken by Daniel or NorthPoint were repaid and distributed to the shareholders, Saro and Crawford, by the end of 1998, which was the last year for which Hren prepared and filed CIS tax returns. The court also considered testimony from John D. Davis, a forensic accountant and CPA, who provided an expert report after his review of voluminous CIS records. Davis came to the same conclusion as Hren. The trial court indicated that there was no evidence to contradict this testimony in Crawford I, and the respondents in this action had failed to proffer "any evidence or affidavits on the instant motion which would refute Hren or Davis' conclusions."
 {¶ 54} With respect to the claims against Holderman, the trial court determined that no authority was submitted to provide a basis for finding Holderman's ministerial and routine act of notarizing a document could implicate her in the conversion of a CIS license. The court also found that there was no evidence that CIS was attempting to renew the license, nor was there evidence that CIS had a need for a renewed license, since it had ceased business operations in 1998. The court also found that there were no facts alleged in the complaint to establish a civil conspiracy or RICO claim, and that this claim was deficient on its face. As the trial court stated, "[Count III] was solely based on legal conclusions without any supporting relevant facts relating to Holderman. It was deficient on its face." The court further found that "these `new claims' (notarization, RICO, and inaccurate financial statements) are obviously an afterthought at best, or a strained effort at worst, to intimidate, punish or harass Hren and Holderman for testifying favorably to Daniel in Crawford I
or were asserted simply to impede the remission of the underlying [Saro]/CIS claims to the Domestic Relations Court."
 {¶ 55} This court has previously recognized that because a trial court has the benefit of observing the entire course of proceedings and will be most familiar with the parties and attorneys involved, a finding as to the commission of frivolous conduct is entitled to substantial deference upon review.Rindfleisch v. AFT, Inc., Cuyahoga App. Nos. 84551, 84897, 84917, 2005-Ohio-191. We also recognize that there is a fine line between zealous and overzealous advocacy that attorneys should not cross.
 {¶ 56} The Climaco appellants should have been aware of the facts and law relating to the claims they were asserting on behalf of their client, and despite being warned of sanctions by defense counsel, they proceeded with their action only to dismiss the claims upon Hren's filing of a motion for summary judgment.
 {¶ 57} Upon our review of the record, we find the trial court did not abuse its discretion in concluding that the claims were brought merely to harass Hren and Holderman. We also find that the claims against Holderman were legally groundless as they were not subject to the savings statute and were clearly barred by the statute of limitations.
 {¶ 58} The transcript reflects that the filing of the claims against Hren and Holderman and the decision to proceed with these claims until a summary judgment motion was filed were the result of the collective efforts of various attorneys in the Climaco firm as well as the efforts of Saro. Accordingly, we uphold the award against the Climaco appellants. The assigned errors of the Climaco appellants are thus overruled.
 {¶ 59} We next address CIS and Saro's second assignment of error:
 {¶ 60} "The trial court erred and abused its discretion by finding the conduct of Saro and CIS was frivolous pursuant to O.R.C. 2323.51 and awarding attorney's fees as sanctions against them."
 {¶ 61} CIS and Saro contend that there were no facts to establish they engaged in frivolous conduct. Saro also asserts that she was never named as a party in the litigation below and that the trial court's finding that she was the "real party in interest" did not legally transform her into an opposing party against whom sanctions could be awarded. CIS and Saro further state that their actions were not willful. They claim that a reasonable and good faith reliance on the advice of counsel over complex legal and factual issues cannot be used to justify sanctions against the client.
 {¶ 62} Holderman argues that this is not an issue of failing to research complex legal issues, but rather is an issue of pursuing factually unsupportable, spurious claims with improper ulterior motives. Hren asserts that Saro assisted in generating accounting information for CIS and should have been aware that the allegations against Hren were contradicted by the evidence presented in Crawford I. Hren further states that CIS and Saro's motive in refiling the unsupported CIS claims was improper and done with indifference to the substantial attorney fees Hren and Holderman would incur in defending the frivolous claims.
 {¶ 63} As found under our review of the Climaco appellants' assignments of error, we find that the claims against Hren and Holderman were frivolous. Not only were the claims against Holderman legally groundless, but also, the record supports the trial court's finding that the claims against both Hren and Holderman were brought merely to harass these parties. The trial court found that the refiled litigation admittedly had Saro's authorization.
 {¶ 64} The trial court further determined that the claims had no significant evidentiary support and that the vast trial and discovery record of Crawford I was provided and available to CIS and Saro. The trial court concluded that CIS and Saro were among the principal parties responsible for the frivolous conduct and that their conduct subjected Hren and Holderman to the rigors and expense of this fruitless litigation. Although Saro claims she is not a party to the action against whom sanctions may be awarded, Saro cites no authority for the proposition that sanctions may not be awarded against a real party in interest.
 {¶ 65} Upon our review of the record, we find the trial court did not err in finding CIS and Saro engaged in frivolous conduct and in awarding attorney's fees against them.
 {¶ 66} The trial court awarded Holderman $9,490 and awarded Hren $29,183.75. In reaching this determination, the trial court considered affidavits of counsel for Hren and Holderman, which itemized their hourly rates and legal services that were expended in defending against the frivolous conduct. The trial court correctly found that an award may include attorney's fees incurred in prosecuting a motion for sanctions. See RonSchneider Assoc. v. London (1998), 81 Ohio St.3d 94, syllabus. The trial court also indicated that no challenge was raised by the opposing parties to the hourly rates, total amount, or itemization of attorney's fees submitted by Hren and Holderman. Likewise, no challenge is raised on appeal as to the amount of the attorney's fees awarded. We find no abuse of discretion as to the amount of the award from our review of the record.[2]
 {¶ 67} The sanction award was also imposed jointly and severally. We note that a sanction award based on joint and several liability is complicated where the sanctioned parties, as here, are in an attorney-client relationship. When determining the apportionment of a sanction award of this nature, a trial court should take into consideration the knowledge and sophistication of the client in relation to the litigation process. However, since the parties did not raise an issue regarding the award of joint and several liability, we decline to address it here.
Joint Motion for Attorney's Fees and Costs
 {¶ 68} As a final matter, we shall address Hren Holderman's joint motion for attorney's fees and costs pursuant to App.R. 23. This rule provides: "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." A frivolous appeal is an appeal that presents no reasonable question for review. Cusick v. North Coast FamilyFound. (July 2, 1998), Cuyahoga App. No. 73458, citing DanisMontco Landfill Co. v. Jefferson Twp. Zoning Comm. (1993),85 Ohio App.3d 494. The decision of whether to award attorney fees for frivolous conduct rests within the sound discretion of this court. Cominsky v. Malner, Lake App. No. 2002-L-103,2004-Ohio-2202.
 {¶ 69} Although we are affirming the decision of the trial court that found the claims against Hren and Holderman to be frivolous, we find reasonable questions were presented for review and decline to impose fees as a sanction with respect to this appeal. In exercising this discretion, we believe an appellate court should exercise caution in awarding sanctions against a party who takes an appeal. While we recognize the interest in deterring frivolous lawsuits, we are also mindful of the adversarial process and its allowance for good faith appeals.
 {¶ 70} We are aware of the need for lawyers to feel free to advocate on behalf of their clients, and we do not wish to diminish that need by this opinion. Nevertheless, there is a readily ascertainable line between the reasonable, zealous litigation of legitimate issues and the needless expenditure of resources on futile claims, as well as the expense of subjecting opposing parties to such claims.
CONCLUSION
 {¶ 71} We affirm this case in all respects.
 {¶ 72} The joint motion for an order granting attorney fees and costs pursuant to App.R. 23 is denied.
Affirmed.
It is ordered that appellees recover of appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., and McMonagle, J., Concur.
[1] The parties agree that the claim for breach of fiduciary duty is governed by a four-year statute of limitations. See R.C.2305.09. A cause of action for breach of fiduciary duty arises when the act or commission constituting the breach of fiduciary duty occurred. Helman v. EPL Prolong, Inc.,139 Ohio App.3d 231, 249, 2000-Ohio-2593. The discovery rule does not toll the statute of limitations for a breach of fiduciary duty claim. Id. The applicable statute of limitations in a claim for civil conspiracy is based on the underlying cause of action, which in this case is the four-year statute for breach of fiduciary duty (R.C. 2305.09(D)) or the one-year statute for professional negligence (R.C. 2305.11(A)).
[2] We note a disparity in the amounts awarded to the attorneys for Hren and Holderman; however, as indicated above, the Climaco appellants and Saro failed to challenge the amounts. Also, the record reflects the award was consistent with the affidavits of counsel, which reveal Hren's attorney performed more work than Holderman's attorney. Thus, we can find no error in the award despite the differing amounts.