JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-Appellant, Daniel A. Dzina ("Daniel"), appeals the trial court's dismissal of his action for lack of subject matter jurisdiction. For the following reasons, we affirm.
 {¶ 2} On December 21, 1998, Daniel and Nancy Saro, f.k.a. Nancy Dzina ("Nancy"), were divorced by judgment of the Cuyahoga County Court of Common Pleas, Division of Domestic Relations ("Domestic Relations Court"). Among the matters set out in the divorce decree was the issue of the division of the marital property estate and the award of spousal support to Nancy. Also, the Dzina's respective shareholder interests in Cleveland Industrial Square ("CIS") and NorthPoint Properties, Inc. ("NorthPoint") were allocated to the parties as part of the divorce decree. Additionally, the decree expressly incorporated therein the parties' Separation Agreement which referenced an Indemnification Agreement. The Indemnification Agreement, which was executed on September 10, 1998, provided that Nancy agreed to defend and indemnify Daniel for any lawsuit filed against him by William Crawford concerning CIS or any lawsuit concerning NorthPoint.
 {¶ 3} On June 23, 2003, Daniel filed the instant action in the Cuyahoga County Court of Common Pleas, General Division ("General Division"). The action asserts breach of contract and unjust enrichment claims against Nancy and Avera International Corporation ("Avera"), a company wholly owned and operated by Nancy. Additionally, in his Complaint, Daniel avers a claim for fraud against Nancy only. Within this claim, Daniel contends that Nancy deceived him, as early as 1997 or 1998 and continuing thereafter, by intentionally misrepresenting in the Separation Agreement, as well as the Indemnification Agreement referenced therein, that she and CIS would never raise claims against Daniel or NorthPoint after the divorce, and further, that she and Avera would indemnify him from third party claims involving their companies. Daniel maintains that Nancy committed the alleged fraud in an effort to seek more money from him after the Separation Agreement was finalized. Daniel also avers malicious prosecution, abuse of process and vexatious litigator against Nancy.
 {¶ 4} On November 24, 2004, the trial court issued a journal entry raising subject matter jurisdiction issues. Within the journal entry, the court ordered the parties to file briefs on the issue of whether Daniel's claims are subject to the exclusive jurisdiction of the Domestic Relations Court. The parties substantially briefed the issue.
 {¶ 5} On May 11, 2005, Daniel filed a Civ.R. 41(A) notice of dismissal of certain claims and allegations. More specifically, Daniel struck references to the "Indemnification Agreement" incorporated into the divorce decree as well as any release and waiver provisions therein.
 {¶ 6} On May 25, 2005, the trial court dismissed all of Daniel's counts for lack of subject matter jurisdiction. Daniel now appeals and asserts one assignment of error for our review. Daniel's sole assignment of error states:
 {¶ 7} "The trial court erred in ruling that it lacked subject matter jurisdiction over the counts raised by Appellant in his complaint and by applying the jurisdictional-priority rule to so dismiss."
 {¶ 8} We review de novo a trial court's grant of a Civ.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction. Travis v. Thompson (June 21, 2001), Cuyahoga App. No. 78384; see, also, Howard v. Supreme Court of Ohio, Franklin App. Nos. 04AP-1093 and 04AP-1272, 2005-Ohio-2130.
 {¶ 9} Once a court acquires jurisdiction of a cause of action, its authority continues until the matter is "completely and finally disposed of." Thus, a court of concurrent jurisdiction is not at liberty to interfere with the first court's proceedings. John Weenink Sons Co. v. Court of CommonPleas of Cuyahoga Cty. (1948), 150 Ohio St. 349, 82 N.E.2d 730, paragraphs two and three of syllabus.
 {¶ 10} The jurisdictional priority rule provides that "as between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." State ex rel. Racing Guild of Ohio v.Morgan (1985), 17 Ohio St.3d 54, 56, 476 N.E.2d 1060, quotingState ex rel. Phillips v. Polcar (1977), 50 Ohio St.2d 279,364 N.E.2d 33, syllabus. Hence, "where a suit is commenced in one jurisdiction which involves the `whole issue' between the parties, a second court may not interfere with the resolution of the issue filed in the first court." Davis v. Cowan Sys.,
Cuyahoga App. No. 83155, 2004-Ohio-515; see, also, CWP Ltd.Pshp. v. Vitrano (May 15, 1997), Cuyahoga App. No. 71314.
 {¶ 11} "The determination of whether two cases concern the same `whole issue' is a two-step analysis. First, there must be cases pending in two different courts of concurrent jurisdiction involving substantially the same parties; and second, the ruling of the court subsequently acquiring jurisdiction may affect or interfere with the resolution of the issues before the court where suit was originally commenced." Id.
 {¶ 12} First, we find that the parties involved in the instant action are substantially similar to the parties in the divorce action. As the trial court noted, Avera is merely an alter ego of Nancy, as Nancy owns 100% of Avera and is the sole shareholder and president of the corporation. Although Daniel now maintains that this assertion is misplaced, he previously stated in his deposition that "Nancy is Avera and Avera is Nancy." Thus, as Daniel instituted this action against Nancy and her alter ego, Avera, the parties in this action are the same as the divorce action involving Daniel and Nancy.
 {¶ 13} Second, we find that a ruling of the General Division may "affect or interfere with the resolution" of the Dzina's divorce action currently before the Domestic Relations Court.[1] The Domestic Relations Court first obtained jurisdiction of Daniel and Nancy when the divorce petition was filed in September 1998. As such, the Domestic Relations Court has jurisdiction to adjudicate the allocation of the marital estate and award of spousal support as it did when it entered the divorce decree which incorporated the parties' Separation Agreement on December 21, 1998.
 {¶ 14} In his Amended Complaint, Daniel maintains eight causes of action. Counts I through IV assert claims for breach of the Indemnification Agreement, which Daniel alleges was incorporated into the Separation Agreement in 1998, and unjust enrichment against both Nancy and Avera.[2] Count V asserts a claim against Nancy for bad faith breach of the Indemnification Agreement. Count VII alleges malicious prosecution and/or abuse of process in that Nancy "used malice in instituting and continuing the claims she directed in both the Callahan case and Crawford case as a means to coerce Daniel Dzina into providing her with monies above and beyond those she had agreed to accept." As each of these claims arises out of and concerns the terms of the Separation Agreement, which was part of the parties' divorce decree, a ruling of the General Division "would affect or interfere with resolution" of the divorce decree which is still pending before the Domestic Relations Court.
 {¶ 15} In Kessler v. Warner (Feb. 15, 2001), Cuyahoga App. No. 78226, this court found that the Domestic Relations Division of the Cuyahoga County Court of Common Pleas, rather than the General Division, should determine the issue of Social Security Association disability payments because the Domestic Relations Court specifically addressed the payments in the post-divorce decree. Likewise, in this case, Daniel's claims for breach of contract, unjust enrichment, malicious prosecution and/or abuse of process, concern the Separation Agreement that was specifically addressed in the Dzina's divorce decree. Accordingly, we find that because the Separation Agreement is a subject of the parties divorce decree, Daniel's aforementioned claims "may affect or interfere with the resolution of the issues before" the Domestic Relations Court.
 {¶ 16} Count VIII alleges that Nancy is a Vexatious Litigator and requests that the trial court "issue an Order * * * prohibiting Nancy Dzina from initiating or continuing any legal proceedings against Daniel Dzina or NorthPoint Properties, Inc. in any division of the Court of Common Pleas for Cuyahoga County, Ohio * * *." An order by the General Division prohibiting Nancy from continuing any legal proceedings against Daniel necessarily includes the divorce action currently pending in the Domestic Relations Court. Accordingly, this request, on its face, would "affect or interfere with the resolution of the issues before" the Domestic Relations Court.
 {¶ 17} Finally, Count VI alleges fraud against Nancy. As did the trial court, we find that Daniel's fraud claim focuses on the Separation Agreement by asserting that Daniel was fraudulently induced to enter into the Agreement in 1998. In reaching this conclusion, the trial court directed the parties to paragraphs 14, 15, 74, 75 and 76 of the Amended Complaint. These paragraphs state:
 {¶ 18} "14) Nancy Dzina made further representations to Daniel Dzina throughout 1998 assuring him that neither one would raise claims or initiate litigation against the other concerning any of their personal or corporate property nor concerning their involvement in both CIS and NorthPoint Properties, Inc. Daniel Dzina reasonably relied upon all the promises and representations made by Nancy Dzina as set forth herein above . . .
 {¶ 19} "15)Further, Nancy Dzina, as Secretary/Treasurer of CIS, represented to Daniel Dzina that CIS was owed no money from Daniel Dzina or NorthPoint Properties, Inc. and that any such monies had been repaid to CIS by December 21, 1998.
 {¶ 20} "* * *
 {¶ 21} "74) Throughout 1997, through and including the early part of 1999, Nancy Dzina made various representations and promises to Daniel Dzina including, without limitation, that she would not seek to raise claims against him and would not seek to raise claims against him and would further indemnify him against any litigation initiated by William Crawford.
 {¶ 22} "75) Daniel Dzina reasonably relied upon these representations to his detriment.
 {¶ 23} "76) Nancy Dzina intentionally misled Daniel Dzina with these various false representations and deliberately induced Daniel Dzina into believing the representations and agreements she made with him with the intent to deceive him and knowing that she would attempt to seek further monies from Daniel Dzina and his corporation other than those to which she had agreed to accept through 1998."
 {¶ 24} In these allegations, Daniel claims that Nancy defrauded him prior to the finalization of the parties' Separation Agreement in 1998. Accordingly, we, like the trial court, find that these allegations suggest a claim for fraud in the inducement.
 {¶ 25} Additionally, the trial court pointed out that Daniel's testimony in his deposition confirms that he asserts a claim for fraud in the inducement. Daniel testified as follows:
 {¶ 26} "Q. Do you feel that she was like fraudulently inducing you through these misrepresentations to enter into the separation agreement?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. And is it your position that had you known what she intended you would not have agreed to that separation agreement as its currently written?
 {¶ 29} "A. I believe so.
 {¶ 30} "Q. That you would have divided it up a different way? Divided up your marital estate a different way?
 {¶ 31} "* * *
 {¶ 32} "A. Of course. I mean, yes."
 {¶ 33} Moreover, the trial court also directed the parties to an earlier brief where Daniel admitted his belief that Nancy's alleged fraud was intended to mislead him in valuing the marital estate and awarding spousal support. The brief in pertinent part states:
 {¶ 34} "* * * At the time these representations were made, they were material to the division of the marital estate that Daniel Dzina and Saro were making in 1998 and which culminated in the Agreement. These representations were also material to Dzina's agreement to advance attorney fees on Saro's behalf to defend the Crawford I litigation.
 {¶ 35} "* * *
 {¶ 36} The result of Daniel Dzina's reasonable reliance on the deliberate misrepresentations of Saro, was that he was directly and proximately injured by advancing attorney fees on Saro's behalf in the Crawford I litigation, by providing her with a larger sum of money for her share of the equity in the 75 Public Square building than that to which Saro would have been otherwise entitled in December of 1998 and by incurring the additional cost and fees associated with defending against the claims of "CIS" whereunder Saro, herself, was attempting to collaterally attack her own Agreement in an attempt to obtain all of NorthPoint and its assets."
 {¶ 37} Daniel's pleadings and deposition testimony confirm the trial court's finding that Daniel asserted a claim for fraud in the inducement. Accordingly, we agree with the trial court and find that Daniel's fraud claim concerns the "whole issue" of the Dzina's divorce action, the fair and equitable division of the marital property and award of spousal support, which was initially determined and is currently pending in the Domestic Relations Court.
 {¶ 38} Daniel maintains that the trial court transformed his claim for fraud into one for fraud in the inducement. In asserting this proposition, Daniel contends that the court erroneously asserted that Nancy's intent to commit fraud arose at the time of the divorce on December 21, 1998, but that a jury could conclude that Nancy "had not decided to attempt to use `CIS' as a tool by which to take additional assets from her husband until sometime in 2002, when she filed the claims on behalf of `CIS' in Case 374378." We find Daniel's argument without merit. It is not what the jury could conclude, but what Daniel asserts in his Amended Complaint which determines the jurisdiction of a court. As previously stated, if the outcome of the court "may affect or interfere with the resolution of the issues" before the Domestic Relations Court, then that court "acquires jurisdiction, to the exclusion of all other courts, to adjudicate upon the whole issue." Davis, supra; Morgan, supra (emphasis added).
 {¶ 39} Finally, we agree with the trial court that the Domestic Relations Court has the power, pursuant to 3105.171(E)(3), to provide equitable relief to Daniel should he prevail on his claims. As noted by the trial court, R.C.3105.171(E)(3) states that the Domestic Relations Court has the statutory authority to remedy "financial misconduct, including, but not limited to * * * concealment, or fraudulent disposition of [marital] assets * * *."
Accordingly, Daniel's fraud claim arises out of, and concerns, the "whole issue" first determined by the Domestic Relations Court. Therefore, as we have found that all eight of Daniel's claims concern the subject matter initially determined in the Domestic Relations Court, the trial court properly dismissed his claims for lack of jurisdiction. Daniel's sole assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sean C. Gallagher, J., and Patricia Ann Blackmon, J., concur.
[1] We note that the divorce action entitled Daniel Dzina v.Nancy Dzina, Case No. DR9-8-263220, is currently on appeal to this court for the ninth time, App. No. 86977. However, at the time the trial court issued its Judgment and Opinion, which is the subject of this appeal, the divorce case was pending in the Domestic Relations Court.
[2] As the trial court aptly noticed, "Plaintiff's recently filed Civ.R. 41(A) notice of dismissal of certain claims and allegations does not materially alter the issues at hand, e.g. Daniel strikes references to the "Indemnification Agreement" incorporated into the Divorce Decree and the release and waiver provisions therein. This Court cannot turn a blind eye to the Divorce Decree or the language agreed to by the parties. Under the parole evidence rule, the written documents prevail over oral testimony on the same subject.