JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Nancy Dzina, n.k.a., Nancy Saro, ("Nancy") and Daniel Dzina ("Daniel") both appeal the trial court's findings regarding the distribution of funds after this court's remand. Nancy assigns five errors; Daniel's cross-appeal contains two assigned errors.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm in part the trial court's decision, and reverse in part and remand for proceedings consistent with this opinion. The apposite facts follow.
 {¶ 3} This matter arises out of a bitterly contested divorce action between the parties. In the past eight years, the parties have filed a multitude of cases in the domestic relations court, court of common pleas, and this court regarding the division of the marital property and related issues. This case is the most recent chapter in the unending litigation between the parties.
 Background {¶ 4} A detailed prior history surrounding this case can be found in this court's opinions in prior appeals.[2] The facts pertinent to this case relate to the trial court's actions post-remand. *Page 4 
 {¶ 5} The subject of our remand order was the trial court's May 13, 2003 order in which it found both Nancy and Daniel in contempt of the divorce decree and made numerous findings concerning the spousal support and property division. Both parties appealed this judgment.
 {¶ 6} On August 26, 2004, we affirmed the trial court's judgment in part and reversed it in part, and remanded the cause for further proceedings consistent with the following: (1) Nancy's distribution award to be increased by $153,705 because of an erroneous double deduction from the sale of the East 152nd Street property for the Rocco Russo Estate debt, (2) Daniel to be ordered to place $153,705 of Nancy's sale proceeds in escrow until the total debt of $307,410 is paid to Russo's estate, (3) Nancy's award to be increased by $250,000 for improper reduction of equity interest in property connected to the Crawford settlement, (4) Nancy's award to be increased by $65,377 for improper capital-gains tax deduction, (5) Nancy's share of Daniel's pre-1998 taxes to be placed in escrow until tax liability is finally determined, (6) valuation of certain property to be based upon the board of revision's determination, (7) Daniel to *Page 5 
place $40,000 into an escrow account for pending tax liabilities, and (8) Nancy's equity in certain properties removed.[3]
 {¶ 7} On remand, the trial court entered judgment on some of the matters pursuant to this court's remand order. However, the court set for hearing issues concerning the pre-1998 taxes and the payment of the Rocco Russo Estate debt. Post-remand, Daniel had also filed a motion to stay payment of any funds arising from the court's May 13, 2003 entry, without interest. The trial court granted the motion. Daniel also filed a Civ. R. 60(B) motion seeking to enforce an indemnification agreement executed by Nancy, which the court set for consideration at the hearing.
 {¶ 8} Nancy filed a writ of mandamus in this court seeking to compel the trial court to enter a judgment in accordance with this court's remand order without holding an additional hearing; requested we void the stay; and requested we void Daniel's Civ. R. 60(B) motion. We dismissed the writ;[4] the Ohio Supreme Court affirmed the dismissal.[5]
 {¶ 9} On October 10, 12, and 13 of 2006, a hearing was conducted before a magistrate. The magistrate heard testimony and received evidence regarding *Page 6 
the payment of the Russo Estate debt and the pre-1998 tax liability of the parties and considered evidence regarding the post-remand motions. The magistrate issued a detailed 29 page opinion, to which both parties filed objections.
 {¶ 10} After sustaining some of the parties' objections, the trial court issued its decision on December 27, 2007. After considering all the issues and calculating various set-offs between the parties, the end result was that Nancy was found to owe Daniel $70,923.
 Noncompliance with Remand {¶ 11} In her first assigned error, Nancy argues the trial court failed to follow the mandate of his court. She contends that our previous remand order constituted the law of the case, which barred the trial court from hearing additional evidence and barred the court from accepting the posting of a property bond in lieu of money placed into escrow. She also contends the trial court had no authority to issue a stay or order that no interest would accrue during the stay.
1.) Hearing
 {¶ 12} Nancy argues that the trial court had no authority to conduct an additional hearing on the remand issues. However, we conclude this court and *Page 7 
the Ohio Supreme Court have issued decisions affirming the trial court's authority to do so in deciding Nancy's complaint for a writ of mandamus.
 {¶ 13} We dismissed the writ because Nancy had an adequate remedy via direct appeal. However, this court also held:
 Contrary to Dzina's claim, we find that Judge Celebrezze has not failed to implement the judgment of this court upon remand. Each of the aforesaid findings by this court requires that Judge Celebrezze conduct additional proceedings. In fact, a review of the docket in the underlying divorce action clearly demonstrates that Judge Celebrezze had scheduled additional proceedings per the order of this court."[6]
 {¶ 14} The Ohio Supreme Court affirmed our decision, noting the same judge that authored the remand order, also authored the decision dismissing the writ.[7] Therefore, we conclude the trial court did not violate the remand order by conducting a hearing.
 2.) Stay of the order *Page 8 
 {¶ 15} Nancy argues the trial court abused its discretion in issuing a stay regarding payments it ordered pursuant to its May 13, 2003 order. We disagree.
 {¶ 16} We held in our dismissal of the writ that the trial court had jurisdiction to grant Daniel's postjudgment motion for stay, stating: "Under Civ. R. 75(I), the continuing jurisdiction of a court that issues a domestic relations decree, `may be invoked by the filing of a motion by a party, regardless of the content or subject matter of the motion.'"[8] The Ohio Supreme Court affirmed this court's conclusion.[9] Thus, we conclude based on these authorities, that the trial court had jurisdiction to grant the stay.
 {¶ 17} Additionally, we conclude the trial court did not abuse its discretion in granting the stay. In determining if a trial court has properly ruled upon a motion to stay the proceedings, the standard of review is whether the trial court's order constitutes an abuse of discretion.[10] In the instant case, issues were still pending that could have impacted the property division by virtue of possible set-offs in the amount Daniel owed to Nancy. A hearing also had to be held to determine Nancy's pre-1998 tax liability and to resolve the issues regarding the *Page 9 
payment of the Rocco Russo Estate debt. Cases collateral to the divorce proceedings were also still pending in the court of common pleas and on appeal that could possibly offset the amount Daniel owed Nancy. Thus, the court's decision to stay the matter until pending issues were resolved was prudent because of the impact these issues could have on the property division.
3.) Interest
 {¶ 18} We also conclude the trial court did not err by failing to award interest during the stay period. Generally, whether to award interest upon obligations arising out of the division of marital property is within the trial court's discretion.[11] As the Ohio Supreme Court in Koegel[12] stated:
 "We * * * decline to hold that a trial judge is obligated as a matter of law to mandatorily affix interest to those monetary obligations which arise out of a property division upon divorce. To do so would impose an unnecessary restraint on a trial judge's flexibility to determine what is equitable in a special set of circumstances."[13]
 {¶ 19} In the instant case, the property division was incomplete because various lawsuits that had the potential of incurring set-offs were still pending. The court also had to conduct a hearing regarding issues relevant to our remand. Although Nancy complains she has gone five years without interest, part of the *Page 10 
reason the distribution has not been made is because of various lawsuits she has filed. Accordingly, under these special circumstances, we conclude the trial court did not err by failing to award interest.
4.) Bond posted in lieu of money
 {¶ 20} Nancy contends the trial court violated our mandate by allowing Daniel to post a property bond worth $1.4 million, for the payment of Nancy's half of the pre-1998 taxes. She contends our remand order specifically required money to be placed in escrow.
 {¶ 21} We conclude the trial court did not violate our remand. The reason we ordered $559,017 to be placed into escrow was to ensure that there were available funds to pay Nancy's half of the pre-1998 taxes, once the amount was determined on remand. Because the property bond exceeds the ordered amount, the tax authorities were ensured to receive any money due by virtue of the property bond. Moreover, the trial court explicitly stated the bond could not be removed unless Daniel placed money into escrow to cover the tax liability.
 {¶ 22} We note, this court also ordered funds be placed in escrow for payment of Nancy's half of the Rocco Russo Estate debt. However, this issue became moot once the Estate's debt was satisfied, which we will discuss further *Page 11 
in Nancy's fourth assigned error. Accordingly, Nancy's first assigned error is overruled.
 Attorney Fees for Indemnification Agreement {¶ 23} In her second assigned error, Nancy contends the trial court erred by granting Daniel's motion to enforce the indemnification agreement. She contends the agreement was not valid; was prohibited by res judicata; and that some of the fees were already considered by James J. Farley, the independent examiner appointed by the court in the prior proceedings.
 {¶ 24} We do not agree that res judicata prevented Daniel from filing the motion. His prior indemnification claims were dismissed both by the domestic relations court and the common pleas court for lack of subject matter jurisdiction. This court in Dzina v. Avera, [14] finally determined that the domestic relations court had jurisdiction over the matter, which prompted Daniel to file the motions that are now before us.
 {¶ 25} However, we do agree with Nancy that the indemnification agreement was not valid. On September 20, 1998, the parties entered into identical indemnification agreements. Pursuant to the agreement Nancy agreed as follows: *Page 12 
 "I, Nancy V. Dzina, hereby agree to indemnify Daniel A. Dzina and hold him harmless in any matter, issue, concern, dispute, action, or lawsuit which may be brought against him by William R. Crawford as such pertains or are alleged to pertain to the ownership, operation, division, sale, and/or dissolution of the corporation known as Cleveland Industrial Square.
 "I further agree to indemnify Daniel A. Dzina and hold him harmless in any matter, issue, concern, dispute, action, or lawsuit concerning the ownership, operation, division, sale, and/or dissolution of the corporation known as NorthPoint Athletic Club, Inc.; NorthPoint Athletic Club II, Inc.; NorthPoint Properties, Inc. and any other corporation in which Daniel A. Dzina, William R. Crawford, and/or I have been involved.
 "In addition I agree to defend Daniel A. Dzina regarding any personal or corporate properties which we own from any claims made thereto by William A. Crawford."
 {¶ 26} The indemnification agreement indicates the parties clearly anticipated the Crawford litigation. On December 21, 1998, however, the parties entered into an amended separation agreement, which was attached to the divorce decree, which provided at paragraph 15:
 "Coincident with the execution of this Agreement, Husband and Wife shall execute a written indemnification Agreement relating to potential adverse claims against either or both of them and their interests." (Emphasis added.)
 {¶ 27} By using the word "coincident" and "shall" the parties were to enter into a new indemnification agreement coinciding with the new agreement. *Page 13 
There is no dispute that another indemnification agreement was never executed; Daniel seeks to enforce the September 1998 indemnity agreement. However, the December 1998 agreement contains an integration clause in paragraph 19 which specifically states:
 "The parties hereto have incorporated in this Agreement their entire understanding. No oral statements or prior written matter extrinsic to this Agreement shall have any force or effect."
 {¶ 28} Prior to dismissing Cleveland Indust. Square v.Dzina[15] in the common pleas court for lack of jurisdiction, the trial court noted the problem the integration clause posed to the enforcement of the indemnification agreement. The court stated in its dismissal order, "The validity of these indemnification agreements is problematic given the integration clause of the Separation Agreement."[16] We agree. By virtue of the agreement's integration clause, the prior written indemnification agreement has no force or effect. As a result, Nancy has no obligation to reimburse Daniel or pay for any of the costs under the indemnification agreement. These fees would primarily concern the fees and costs related to the Crawford suits. Accordingly, we sustain Nancy's second assigned error. *Page 14 
 Financial Misconduct {¶ 29} In her third assigned error, Nancy contends the trial court erred in finding her liable for financial misconduct and awarding Daniel $750,000 in attorney fees as compensatory damages pursuant to R.C. 3105.171(E)(3).
 {¶ 30} Nancy argues that the alleged damages that Daniel seeks occurred after the initial distribution of the marital assets; therefore, R.C. 3105.171(E)(3), which governs the distribution of marital assets, does not apply. However, this court in Dzina v. AveraInternational Corp.[17] dismissed Daniel's claims for financial misconduct for lack of subject matter jurisdiction and specifically found that the domestic relations court could provide Daniel a remedy for Nancy's financial misconduct under R.C. 3105.171(E)(3).
 "Finally, we agree with the trial court that the Domestic Relations Court has the power, pursuant to R.C. 3105.171(E)(3), to provide equitable relief to Daniel should he prevail on his claims. As noted by the trial court, R.C. 3105.171(E)(3) states that the Domestic Relations Court has the statutory authority to remedy `financial misconduct, including, but not limited to * * * concealment, fraudulent disposition of [marital] assets * * *.' Accordingly, Daniel's *Page 15 fraud claim arises out of, and concerns, the `whole issue' first determined by the Domestic Relations Court. Therefore, as we have found that all eight of Daniel's claims concern the subject matter initially determined in the Domestic Relations Court, the trial court properly dismissed his claims for lack of jurisdiction."
 {¶ 31} No appeal was taken from this court's opinion. Accordingly, it constitutes the law of the case. In addition, other courts have found R.C. 3105.171(I), which prevents future modification of a property division under R.C. 3105.171(E)(3), "does not prevent a court from entering further orders * * * which help execute the divorce decree."[18] Thus, the trial court correctly considered Daniel's financial misconduct claim under R.C. 3105.171(E)(3).
 {¶ 32} At the hearing, the parties testified to the alleged facts surrounding the financial misconduct, each pointing out that the other had filed suits post-decree. Based on the information and further briefing by the parties, the trial court concluded evidence supported Daniel's claim. Based on the record before us, we conclude the trial court did not abuse its discretion in so finding.[19] *Page 16 
 {¶ 33} Nancy also objects to the trial court's award of $750,000 in attorney fees to Daniel as compensation for the fees he incurred litigating the various civil suits related to the marital property. As large as that sum seems, Daniel had requested $1,868,844.86 in attorney fees and an additional $2,360,769 he incurred as a result of refinancing property, which the court did not award.
 {¶ 34} What concerns us about the amount, however, is it is impossible for us to determine if the award includes fees awarded pursuant to the indemnification agreement, which we have since found invalid. In awarding the amount, the trial court specifically stated, "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendant shall pay to the plaintiff, in sum of $750,000, which sum represents reasonable attorney fees, as a result of the defendant's financial misconductand breach of indemnification agreement[.]"[20]
 {¶ 35} Therefore, although we do not find the amount per se in error, we remand the attorney fees for an itemization detailing how the $750,000 was *Page 17 
calculated; if it does contain fees related to the invalid indemnification agreement, those amounts are to be subtracted from the total amount.
1.) Contempt
 {¶ 36} Nancy also contends the trial court abused its discretion by finding that her lawsuits to protect her property interests constituted contempt. We disagree.
 {¶ 37} We apply an abuse of discretion standard to our review of the lower court's contempt finding.[21] In Windham Bank v.Tomaszczyk, [22] the Ohio Supreme Court held: "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." By filing her litigation, in her name and in the name of her alter ego, Cleveland Industrial Square, Nancy violated the trial court' s order to refrain from pursing Daniel's property interest in the East 152nd Street and 75 Public Square properties. A property division in a divorce decree may be *Page 18 
enforced by contempt proceedings.[23] We conclude the trial court did not abuse its discretion by finding Nancy in contempt.
 {¶ 38} As a result of her contempt, Nancy was ordered to pay $100,000 of the $433,784 in attorney fees that Daniel incurred as a result of the contempt. Nancy contends there was no evidence regarding the reasonableness of these fees. The trial court specifically found the fees to be reasonable. Under limited circumstances, the court may use its own knowledge and experience in determining the reasonableness of attorney fees.[24] In the instant case, given the trial court's extensive history with this case and its intimate knowledge of the contentious nature of the case, we conclude it could determine whether the fees were reasonable based on its knowledge and experience.
 {¶ 39} Although Nancy argues the order she violated was invalid because it sought to control a future act, she failed to raise this issue in her objections to the magistrate's report. Therefore, pursuant to R.C. 53(E)(3)(d)(2), we will not address this argument.[25]
Additionally, she failed to appeal this *Page 19 
provision in the prior appeal before this court, in which we addressed the May 13, 2003 order.
 {¶ 40} Accordingly, Nancy's third assigned error is overruled in part and sustained in part. The trial court is to delineate what services are contained in the $750,000 award, and must deduct any amount related to the indemnification agreement.
 Remand Order {¶ 41} In her fourth assigned error, Nancy contends the trial court erred and abused its discretion in numerous respects regarding the findings it made after this court's remand order.
1.) Rocco Russo Estate Debt
 {¶ 42} Rocco Russo had loaned Daniel $307,410 so that he could purchase property located at 775 East 152nd Street in Cleveland, Ohio. In 2001, Daniel sold the property. The trial court determined that Nancy's share of the proceeds from that sale should be reduced by one-half of the debt Daniel owed to the Rocco Russo Estate.
 {¶ 43} This court had ordered that $153,705 in funds be placed in escrow until the $307,410 debt to Rocco Russo's Estate was paid. Additionally, this court ordered that if the Estate failed to request payment within a reasonable amount of time, the amount held in escrow should be paid to Nancy. Nancy *Page 20 
contends the Estate did not request payment in a reasonable amount of time and there was no evidence the debt was paid to the Estate; therefore, the amount held in escrow should have been released to her.
 {¶ 44} The evidence at the hearing indicated that Michael Russo, the sole heir and beneficiary of the Estate, submitted an affidavit to the trial court stating the debt of $307,410 had been satisfied. Daniel paid the debt by transferring to Michael Russo 25% ownership of SouthPoint Properties Inc.'s stock, which was worth at least $307,410. Daniel chose the stock transfer as a method of payment in order to avoid impairing the working capital of his various businesses.
 {¶ 45} Nancy contends Daniel violated this court's remand order because he paid Michael Russo directly instead of paying the Estate. However, we conclude that because Michael Russo was the sole heir of the Estate, the direct payment achieved the same result as this court's directive. That is, Michael Russo would have received the amount via probate as the sole heir anyway.
 {¶ 46} Nancy also contends that in his affidavit, Michael Russo stated the debt had been "satisfied," which does not comply with this court's order that the debt be "paid." We conclude Nancy is being hyper-technical in interpreting our decision. Obviously, the payment of the debt results in the debt being satisfied. *Page 21 
 {¶ 47} Nancy also contends there is no evidence that Michael Russo actually received payment of the debt. We review challenges to the trial court's finding of facts pursuant to an abuse of discretion standard because the trial court is in the best position to view the witnesses and weigh the credibility of the proffered testimony.[26] Thus, a reviewing court will not reverse factual findings that are supported by some competent, credible evidence.[27]
 {¶ 48} The trial court heard a great amount of testimony regarding the payment of the debt and the transfer of the shares. Therefore, it was in the best position to determine the credibility of the parties. Additionally, the trial court held that Michael Russo's affidavit, in which he stated the debt was satisfied, bars the Estate from asserting nonpayment of the debt. Accordingly, we conclude the evidence supports the trial court's finding that the debt was extinguished.
2.) Pre-1998 Tax Liability
 {¶ 49} Pursuant to the parties' separation agreement, the parties agreed to split the tax liability for the years preceding 1998. At the time of our prior opinion, the amount of the pre-1998 taxes was not established. Therefore, on *Page 22 
remand the trial court's hearing dealt with the tax liability for these years. The report of the court's independent examiner, James J. Farley, indicates he estimated the parties' pre-1998 tax liability was $1.8 million dollars. Daniel's tax counsel, Scott Broome, who was retained by Daniel to resolve the tax liability issues testified that through his legal services, he was able to reduce the amount to $488,481.07. The court, therefore, ordered the parties to each pay half of this amount, along with half of Broome's attorney fees.
 {¶ 50} Nancy contends the trial court erred in concluding the tax liability was $488,481.07. She contends her expert, Bernard Agin, testified that the amount of the pre-1998 liability was $181,300.40. However, the trial court heard the evidence from both experts and was able to determine which calculations were credible. On cross-examination, Agin admitted he based his opinion on the documents supplied to him by Nancy's counsel and that he did not confer with
 {¶ 51} Scott Broome, who was retained to resolve the pre-1998 tax liability issue. Therefore, based on the evidence, we conclude the trial court did not abuse its discretion by accepting Broome's estimate over Agin's.
3.) Real Estate Refund
 {¶ 52} Nancy also claims that she is entitled to an additional $26,330.07 as a result of a real estate tax refund Daniel received on NorthPoint Properties. Our review of the record indicates that Nancy failed to raise this issue in a post-decree *Page 23 
motion. Consequently, because it was not raised before the court below, we cannot address the refund. Accordingly, Nancy's fourth assigned error is overruled.
 Evidence from other Cases Improper {¶ 53} In her fifth assigned error, Nancy contends the trial court erred by considering evidence from the Callahan and Crawford cases. She concludes these cases were concluded prior to the trial court's original decree entered on May 14, 2003, and that decree did not take into account these cases.
 {¶ 54} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.[28] We conclude the trial court did not abuse its discretion because it considered these records in determining the financial misconduct claim that Daniel brought against Nancy. Part of Daniel's argument was that Nancy raised identical issues in the Cleveland Industrial Square cases as the ones she raised as cross claims in the Callahan and Crawford I cases. Accordingly, Nancy's fifth assigned error is overruled.
 DANIEL DZINA'S CROSS-APPEAL Refinancing Damages *Page 24 {¶ 55} In his first cross assigned error, Daniel contends the trial court abused its discretion by not awarding him an additional $2.3 million as damages for Nancy's financial misconduct. He contends he incurred these costs because he had to refinance the 75 Public Square property in order to pay the attorney fees and settlements. We disagree.
 {¶ 56} At the hearing, Daniel stated several times that the costs he incurred defending himself with regard to the litigation instigated by Nancy, and general operating costs of his business, required him to refinance. Thus, the refinancing costs were not strictly related to Nancy's conduct. Moreover, it is unknown whether Daniel would have refinanced even without owing the litigation costs and it is also unknown whether he could have obtained a better interest rate. Thus, because of these unknown variables, the court did not err by refusing to award Daniel his refinancing costs. Accordingly, Daniel's first cross-assigned error is overruled.
 $500,000 Lien Resulting from Crawford Settlement {¶ 57} In his second assigned error, Daniel contends the trial court erred in failing to adust the equity value on 75 Public Square property. He contends he made a payment to Mr. Crawford in the amount of $500,000 in order to remove a constructive lien on the property. He contends Nancy's total distributive award should be reduced by $250,000 as she is liable for half the settlement. *Page 25 
 {¶ 58} Res judicata prevents us from considering this assigned error. This court in its remand order clearly stated that Nancy received no benefit from the settlement and reinstated $250,000 to her distribution. Moreover, we have held in Nancy's second assigned error that the indemnification agreement was invalid. Therefore, she is not liable for the Crawford litigation that is unrelated to her. Accordingly, Daniel's second assigned error is overruled.
 {¶ 59} In conclusion, the judgment is affirmed in all respects except as to the indemnification agreement and the $750,000 attorney fee award. Having found the indemnification agreement invalid, it must be determined whether the court's $750,000 attorney fee award includes fees related to the indemnification agreement. Thus, we remand solely for the trial court to delineate the fees it awarded and subtract from the award amounts related to the indemnification agreement.
 {¶ 60} Judgment affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the
Court of Common Pleas, Domestic Relations Division, to carry this
 judgment into execution. *Page 26 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and MELODY J. STEWART, J., CONCUR
 APPENDIX Assignments of Error:
 {¶ 61} "I. The trial court erred and abused its discretion in failingto follow the remand order in the Eighth Appellate District CaseNo. 83148."
 {¶ 62} "II. The trial court erred and abused its discretion inawarding the appellee attorney fees in the amount of $750,000 forappellant's alleged violation of an indemnification agreement that wasnot incorporated into the final judgment entry of divorce of December21, 1998."
 {¶ 63} "III. The trial court erred and abused its discretion infinding that appellee's motion to hold appellant liable for herfinancial misconduct pursuant to Ohio Revised Code 3105.171(E)(3) iswell taken, granting appellee's motion to show cause, ordering appellantto pay appellee attorney fees in the sum of $100,000, and sentencing theappellant to thirty days in jail with a purge for her to remain incompliance with the court's prior orders."
 {¶ 64} "IV. The trial court erred and abused its discretion innumerous respects with regard to the remand order." *Page 27 
 {¶ 65} "V. The trial court erred and abused its discretion inreceiving into evidence transcripts, bills, and attorney files in otherlitigation not related to the issues in the instant case."
 Daniel Dzina's Cross-appeal:
 {¶ 66} "I. The court erred in not awarding theappellee/cross-appellant an additional $2.3 million in the form of adistributive award for the appellant's/cross-appellee's financialmisconduct and pursuant to the parties' mutually executedindemnification agreement. Said figure was arrived at byappellee/cross-appellant's qualified expert, Mr. John Davis."
 {¶ 67} "II. The trial court erred in calculating the equity in 75Public Square by failing to reduce that equity value by $500,000.00,which was the amount of the lien on said property held by WilliamCrawford, as determined by court order. This adjustment would havereduced the spousal support buy-out by $250,000."
[1] See appendix.
[2] Cleveland Industrial Square, Inc. v. Dzina, Cuyahoga App. Nos. 85336, 85337, 85422, 85423, 85441, 2006-Ohio-1095; Dzina v. Dzina, Cuyahoga App. No. 83148, 2004-Ohio-4497; Dzina v. Celebrezze,Judge, Cuyahoga App. No. 85043, 2005-Ohio-3127; Dzina v. Dzina, Cuyahoga App. No. 80029, 2002-Ohio-2753; Dzina v. Avera International Corp., Cuyahoga App. No. 86583, 2006-Ohio-1363.
[3] Dzina v. Dzina, Cuyahoga App. No. 83148, 2004-Ohio-4497.
[4] Dzina v. Judge James P. Celebrezze, Cuyahoga App. No. 86043,2005-Ohio-3127.
[5] Dzina v. Celebrezze, 108 Ohio St.3d 385, 2006-Ohio-1195.
[6] Dzina v. Celebrezze, Judge, Cuyahoga App. No. 86043,2005-Ohio-3127, at ¶ 6.
[7] Dzina v. Celebrezze, Judge, 108 Ohio St.3d 385,2006-Ohio-1195.
[8] Id. at ¶ 15, citing to State ex rel. Soukup v. JudgeCelebrezze (Feb. 12, 1998), Cuyahoga App. No. 83000.
[9] Dzina v. Celebrezze, Judge, 108 Ohio St.3d 385,2006-Ohio-1195.
[10] Nationwide Mut. Fire Ins. Co. v. Modroo, 11th
Dist. No. 2004-G-2557, 2004-Ohio-4697; Zachary v. Crocket Homes,Inc., 5th Dist. No. 2003CA00131, 2003-Ohio-5237, ¶ 15.
[11] Koegel v. Koegel (1982), 69 Ohio St.2d 355, syllabus.
[12] Id.
[13] Id.
[14] Dzina v. Avera International Corp., Cuyahoga App. No. 86583,2006-Ohio-1363.
[15] Cuyahoga Court of Common Pleas, Case No. CV-519595.
[16] Id. at 6.
[17] Cuyahoga App. No. 86583, 2006-Ohio-1363.
[18] Ziegler v. Ziegler, 7th Dist. No. 03 MA 201,2005-Ohio-2789. See, also Rudduck v. Rudduck (June 16, 1999), 5th Dist. No. 98CA85.
[19] Following is the list of cases and appeals regarding the marital property of which the court took judicial notice: Nancy Dzina v. DanielDzina, Cuyahoga Co. Common Pleas Case No. CV-434166 (the "Callahan Case"); Cleveland Industrial Square v. Daniel A. Dzina, Cuyahoga Co. Court of Common Pleas Case No. CV-519595; Cleveland Industrial Square v.Daniel A. Dzina, et al, Cuyahoga Co. Common Pleas Court No. CV-504035;Cleveland Industrial Square v. Daniel Dzina, Cuyahoga App. No. 85422,2006-Ohio-1095; Daniel A. Dzina v. Avera International Corp., Cuyahoga App. No. 86583, 2006-Ohio-1363.
[20] Journal Entry, December 27, 2007, at 8 (emphasis added).
[21] Marden v. Marden (1996), 108 Ohio App.3d 568, 571.
[22] (1971), 27 Ohio St.2d 55; see, also, Chojnowski v.Chojnowski, Cuyahoga App. No. 81379, 2003-Ohio-298; R.C. 2705.02.
[23] Id., citing Harris v. Harris (1979), 58 Ohio St.2d 303.
[24] See Goode v. Goode (1991), 70 Ohio App. 3d 125, 134;Citta-Pietrolungo v. Pietrolungo, Cuyahoga App. Nos. 81943 and 82069, 2003-Ohio-3357; Jacobson v. Starkoff, Cuyahoga App. No. 80850, 2002-Ohio-7059; Deegan v. Deegan (Jan. 29, 1998), Cuyahoga App No. 72246.
[25] Civ. R. 53(E)(3)(d) reads as follows: "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
[26] In re Jane Doe I (1991), 57 Ohio St.3d 135, 138; Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 23.
[27] C.E. Morris Const. Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 280; Dzina v. Dzina, Cuyahoga App. No. 83148, 2004-Ohio-4497, at ¶ 10.
[28] State v. Haines, 112 Ohio St.3d 393, 2006-Ohio-6711; State v.Robb (2000), 88 Ohio St.3d 59, 68, 2000-Ohio-275. *Page 1